# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **THE STEP2 COMPANY, LLC,** | Case No. 5:24-cv-807 |
| Plaintiff, | **COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| **LEDGE LOUNGER, INC.,** | |
| Defendant. | |

The Step2 Company, LLC ("Step2"), for its complaint against Defendant Ledge Lounger, Inc. ("Ledge Lounger"), states as follows:

## SUMMARY AND NATURE OF THE ACTION

1. Not all companies can thrive in the face of fair competition. Regrettably, some choose to cheat rather than compete fairly. Defendant Ledge Lounger is such a company. When Defendant Ledge Lounger noticed that Step2 and other companies had begun selling competitive chaise lounges, Defendant Ledge Lounger abused the trademark system by seeking monopoly protection for the generic shape of a chaise lounge that had been around for *decades*. Worse, Defendant Ledge Lounger submitted multiple bogus infringement reports with Amazon, resulting in the removal of successful and non-infringing chaise lounges of competitors, including Step2. Step2 files this lawsuit to put an end to Defendant Ledge Lounger's abusive, anticompetitive tactics and to recover damages resulting from Defendant Ledge Lounger's bad-faith misconduct.

## PARTIES

2. Step2 is a Delaware limited liability company with a principal place of business at 10010 Aurora Hudson Road, Streetsboro, Ohio 44241.

3. On information and belief, Defendant Ledge Lounger is a Texas corporation with a principal place of business at 616 Cane Island Parkway, Katy, Texas 77494.

**JURISDICTION AND VENUE**

4. The below claims for declaratory judgment arise under the Federal Trademark Act of 1946, 15 U.S.C. § 1051 et seq., and under 28 U.S.C. §§ 2201 and 2202.

5. Subject matter jurisdiction of this Court is conferred by 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338, and this Court has supplemental jurisdiction for claims arising under state law under 28 U.S.C. § 1367.

6. Venue in this judicial district is proper under 28 U.S.C. § 1391 at least because this judicial district is where Defendant Ledge Lounger is subject to the Court's personal jurisdiction with respect to this action and because Defendant Ledge Lounger's false trademark claims arose in this district.

7. This Court has personal jurisdiction over Defendant Ledge Lounger at least because the Court's exercise of personal jurisdiction is consistent with the Ohio Constitution and the United States Constitution. In addition, this Court has personal jurisdiction over Defendant Ledge Lounger at least because Step2's causes of action arise from (1) Defendant Ledge Lounger's causing tortious injury in Ohio, where Defendant Ledge Lounger regularly does and solicits business; and (2) Defendant Ledge Lounger's causing tortious injury in Ohio to Step2 by an act outside Ohio committed with the purpose of injuring Step2, when Defendant Ledge Lounger might reasonably have expected that Step2 would be injured thereby in Ohio. Ohio Rev. Code § 2307.382; *SnapRays*, *dba SnapPower v. Lighting Def. Grp.*, No. 2023-1184, 2024 WL 1916631, at *5 (Fed. Cir. May 2, 2024) (holding extra-judicial enforcement activities through Amazon

subjected defendant to personal jurisdiction in plaintiff's state for declaratory judgment claim, reversing district court's granting of motion to dismiss for lack of personal jurisdiction).

## BACKGROUND COMMON TO ALL CLAIMS

### *Step2 and Its Vero Pool Lounger*

8. Step2—located in Streetsboro, Ohio—was founded in 1991 and is one of the largest American manufacturers of preschool and toddler toys; Step2 also is one of the world's largest rotational molders of plastics.

9. Over the years, Step2 has successfully expanded from toys into other areas, including the home and garden market.

10. Most recently, in 2023, Step2 expanded further into the pool category and now sells pool furniture, which includes the "Vero Collection":



**Step2's Vero Collection**

11. The Vero Collection has been an enormous success for Step2. One of the best sellers in the Vero Collection is the Vero Pool Lounger, an outdoor pool chair with a sleek, minimalist design in the well-known shape of a curved chaise lounge, as shown below:



**Step2's Vero Pool Lounger**

### *History of Chaise Lounges*

12. A "chaise longue" (or the anglicized "chaise lounge") originally referred to an upholstered sofa in the shape of a chair that was long enough to support the legs of the sitter. The modern chaise lounge was first popularized in 16th-century France, created to allow the wealthy to rest without the need to retire to a bedroom.

13. Today, however, the chaise lounge now broadly refers to any long reclining chair sized to support an entire body.

14. The shape of the modern chaise lounge has a curved profile and has been recognizable and ubiquitous for at least a century. For example, below are some of the more famous designs:

4

| Designer(s) | Date | Name | Image |
|---|---|---|---|
| Edward Wormley | 1948 | Listen-to-Me Chaise | |
| Greta M. Grossman | 1951 | GMG Chaise Lounge | |
| Adrian Pearsall | 1960s | Wave Lounge Chair | |
| Poul Kjærholm | 1960s | PK 24 Chaise Lounge Chair | |
| Niels Hvass | 1996 | Wave | |
| BuskHertzog | 2003 | SENSE lounge chair | |

15. Chaise lounges have been widely available at retail stores in the United States for decades. For example, on information and belief, the Wave chaise from Float LLC, shown below, was available at least as early as 2008:




**Wave Chaise as Shown in Architectural Digest**  **Wave Chaises as Shown in Dwell Magazine**

*Defendant Ledge Lounger's Improper Attempts*
*To Monopolize the Shape of the Chaise Lounges*

16. Since approximately 2019, Defendant Ledge Lounger has attempted to secure for itself intellectual property protection for the various shapes of chaise lounges.

17. For example, in December 2019, Defendant Ledge Lounger filed applications for two design patents. In April 2021, those applications issued as U.S. Patent Nos. D917,189 and D917,190.

18. Later, in November 2021, Defendant Ledge Lounger filed another design patent application, issuing as U.S. Patent No. D985,953 in May 2023.

19. Below are figures from the three design patents:

6



FIG. 1
Defendant's
U.S. Patent No. D917,189

FIG. 1
Defendant's
U.S. Patent No. D917,190

FIG. 1
Defendant's
U.S. Patent No. D985,953

20. Unlike utility patents, the purpose of design patents is to protect the ***ornamental design*** of an "article of manufacture" for a limited time: 15 years. 35 U.S.C. §§ 171, 173. The subject matter that is claimed "is the design embodied in or applied to an article of manufacture (or portion thereof) and not the article itself." Manual of Patent Examining Procedure § 1502.

21. To obtain a design patent, the claimed design must be "new," and the application must be filed within one year after the first public disclosure. 35 U.S.C. §§ 102, 171. To be "new," an ordinary observer must view the design as different, rather than a modified version of an already existing design with minor differences. *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1241 (Fed. Cir. 2009).

22. And, importantly, the protection is limited to the specific design shown and claimed in solid lines—not dashed or broken lines, which are meant to reflect what has ***not*** been claimed. *See In re Zahn*, 617 F.2d 261, 266-67 (CCPA 1980); *In re Blum*, 54 CCPA 1231, 374 F.2d 904, 907 (CCPA 1967).

23. Although design patents may provide narrow protection, Defendant Ledge Lounger—on information and belief—wanted to secure for itself exclusivity over the generic shape of its "Signature Chaise," which Defendant Ledge Lounger had been selling since 2011.

7

Defendant Ledge Lounger could not obtain design patent protection for that shape, though, at least because that generic shape had long been in the public domain and in use by others.

24. Consequently, unable to secure for itself patent protection on the generic shape of the "Signature Chaise," Defendant Ledge Lounger was seemingly powerless to stop others from competing fairly in the marketplace.

25. And so Defendant Ledge Lounger chose to pursue a different path to try to stymie legitimate competition: *trademark law*.

26. But the purposes of trademark law and patent law are very different. While patent law incentivizes innovation by granting inventors exclusive rights to their inventions for a limited time, the primary purpose of trademark law is to prevent *consumer confusion* by ensuring that consumers can identify and rely upon consistent quality and origin of products and services.

27. Determined to prevent healthy competition with its "Signature Chaise" and disregarding the purpose of trademark law, Defendant Ledge Lounger filed a trademark application in August 2019, seeking for itself the exclusive rights to the shape of the "Signature Chaise"—eight years after Defendant Ledge Lounger had been selling it.

28. Specifically, Defendant Ledge Lounger sought protection in alleged *trade dress*, i.e., the visual appearance of a product or its packaging, which can be protected only under one of two circumstances. First, the product design can be protected if it is *inherently distinctive*, i.e., its "intrinsic nature serves to identify a particular source." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). Second, a non-inherently distinctive trade dress is protectable if it *acquires distinctiveness* through secondary meaning, which occurs when, "in the minds of the public, the primary significance of a [trade dress] is to identify the source of the product rather than the product itself." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n.11 (1982).

29. The shape of Defendant Ledge Lounger's "Signature Chaise," however, is not inherently distinctive, and the public has never associated the generic chaise shape with Defendant Ledge Lounger or come to rely on the generic chaise shape as a source identifier.

30. After the trademark application published in November 2021, competitors noticed that Defendant Ledge Lounger had inappropriately attempted to monopolize the generic design of a chaise lounge, and, in March 2022, Advantus, Corp. ("Advantus") filed a "notice of opposition" with the Trademark Trial and Appeal Board ("TTAB") of the United States Patent and Trademark Office ("USPTO"), opposing the application. Attached as Exhibit 1 is a copy of Advantus's notice of opposition, and the documents for the related proceeding—including the exhibits to the notice of opposition—are available at https://ttabvue.uspto.gov/ttabvue/v?pno=91274876.

31. Advantus's notice of opposition correctly demonstrated that the alleged trade dress was not registrable for multiple reasons, including: (1) the alleged trade dress comprises matter that, as a whole, is functional; (2) the alleged trade dress is not inherently distinctive and had not acquired distinctiveness; and (3) Defendant Ledge Lounger had attempted to obtain a registration through fraud. (*See, generally*, Ex. 1.)

32. With respect to functionality, Defendant Ledge Lounger's "Signature Chaise," designed to support a full adult and allow partial submersion in water, is shaped strictly to accomplish the chaise's purpose. For among other reasons, the shape is essential to the use of a chair as marketed by Defendant Ledge Lounger to be partially submerged in water. The product configuration is thus functional and not registrable under the Trademark Act § 2(e), 15 U.S.C. § 1052(e)(5).

33. In fact, the USPTO trademark examining attorney assigned to the application noted the functionality of the alleged trade dress and initially rejected the application in December 2019 on that ground.

34. In response, though, Defendant Ledge Lounger submitted a declaration by its Chief Executive Officer, Christopher Anderson, swearing under oath:

> Neither the applied-for-mark, nor any features thereof, is or has been the subject matter of a design or utility patent or patent application, including expired patents and abandoned patent applications.

35. That statement is false. When Mr. Anderson made that statement, he was one of the named inventors of U.S. Patent No. 10,104,975, which expressly described the functionality of Defendant Ledge Lounger's "Signature Chaise."

36. On information and belief, both Defendant Ledge Lounger and Mr. Anderson knew the statement was false when Defendant Ledge Lounger submitted the declaration to the USPTO.

37. On information and belief, Defendant Ledge Lounger submitted the false declaration with the purpose of stymieing fair competition and harming Defendant Ledge Lounger's competitors.

38. Advantus expressly referenced the fraud in its notice of opposition. (Ex. 1 ¶¶ 115-138.)

39. Before the TTAB could issue a final decision with respect to the notice of opposition, however, Defendant Ledge Lounger—on information and belief—convinced Advantus to withdraw the petition.

40. And so, on November 22, 2022, Advantus withdrew its opposition, and, with the opposition withdrawn, the USPTO allowed the registration on December 27, 2022, No. 6,932,905 ("the '905 Registration," attached as Exhibit 2), based, in part, on Defendant Ledge Lounger's fraudulent statements.

41. On information and belief, ever since Defendant Ledge Lounger obtained the '905 Registration, Defendant Ledge Lounger has known that its alleged trade dress is functional, is not distinctive, is generic, and was obtained through fraud.

### *Defendant Ledge Lounger's Abusive,*
### *Anti-Competitive Weaponization of Its Registration*

42. With the '905 Registration in hand, Defendant Ledge Lounger wasted no time asserting it against competitors.

43. For example, Defendant Ledge Lounger noticed competitor Global Pool Products, Inc. ("Global Pool Products") had begun threatening Defendant Ledge Lounger's market share with the sale of a competitive chaise lounge.

44. In response to this threat, Defendant Ledge Lounger—on information and belief—submitted one or more infringement reports to Amazon, asserting that chaise lounges of Global Pool Products had infringed the '905 Registration.

45. Because the '905 Registration is invalid and obtained through fraud, Global Pool Products filed a petition with the TTAB in November 2023 to cancel the registration, explaining correctly that the alleged trade dress is generic, that the alleged trade dress is functional, and that the '905 Registration was obtained through fraud. (*See, generally*, Global Pool Product's Petition for Cancellation, attached as Exhibit 3.) The documents for the related proceeding—including the exhibits to the petition—are available at https://ttabvue.uspto.gov/ttabvue/v?pno=92083609.

46. Four days later, Defendant Ledge Lounger sued Global Pool Products in U.S. District Court for the Southern District of Texas, Case No. 4:23-cv-04258, asserting nine claims for relief, including claims for infringement of the '905 Registration. Notably, however, Defendant Ledge Lounger did not sue Global Pool Products for alleged infringement of any design patent. In lieu of answering, Global Pool Products moved to dismiss under Rule 12(b)(6) on the grounds that

11

Ledge Lounger had failed to plead plausible facts that the '905 Registration is valid. The district court has not yet ruled on the motion.

### *Defendant Ledge Lounger's Anti-Competitive Attacks against Step2*

47. With the motion to dismiss pending, on April 3, 2024, Defendant Ledge Lounger sent a cease and desist letter to Step2 at Step2's headquarters in Streetsboro, Ohio, alleging that Step2's Vero Pool Lounger infringed the '905 Registration. Defendant Ledge Lounger did not allege that Step2 had infringed any of Defendant Ledge Lounger's patents.

48. On information and belief, around the same time, Defendant Ledge Lounger submitted multiple infringement reports to Amazon, alleging that Step2's Vero Pool Lounger infringed valid trade dress rights in Defendant Ledge Lounger's "Signature Chaise" and demanding removal of Step2's Vero Pool Lounger from Amazon.

49. On information and belief, when Defendant Ledge Lounger submitted its infringement reports regarding Step2's Vero Pool Lounger, Defendant Ledge Lounger threatened—either expressly or impliedly—to sue Amazon if Amazon refused to remove Step2's listings for the Vero Pool Lounger.

50. On information and belief, each time Defendant Ledge Lounger submitted such an infringement report to Amazon, Defendant Ledge Lounger knew (1) that the '905 Registration was invalid, (2) that the '905 Registration was obtained through fraud, (3) that Step2's Vero Pool Lounger did not infringe the '905 Registration, and (4) that Step2 had significant sales of the Vero Pool Lounger through Amazon.

51. In other words, Defendant Ledge Lounger knowingly submitted false and baseless infringement reports to Amazon with the purpose of stymieing fair competition and harming Step2, including harming Step2's business relationships with both Amazon and Step2's customers.

52. In response to Defendant Ledge Lounger's reports, Amazon removed Step2's Vero Pool Lounger from Amazon.

53. On information and belief, when Defendant Ledge Lounger submitted its infringement reports to Amazon regarding Step2's Vero Pool Lounger, Defendant Ledge Lounger believed that Amazon would remove the listings for Step2's Vero Pool Lounger as standard operating procedure, regardless of the merits of Defendant Ledge Lounger's allegations.

54. Moreover, when Defendant Ledge Lounger submitted its infringement reports with Amazon regarding Step2's Vero Pool Lounger, Defendant Ledge Lounger purposefully directed its activities at Step2 in Ohio, intending effects that would be felt in Ohio, and, indeed, that were expressly aimed at Ohio.

55. As a result of Defendant Ledge Lounger's false statements and related misconduct, Step2 has already lost significant sales of the Vero Pool Lounger, and, unless the Court enjoins Defendant Ledge Lounger, Step2 will suffer millions of dollars in additional damages as well as serious and irreparable harm, including to the reputation and goodwill that Step2 has spent years and significant resources building with its customers.

**FIRST CLAIM FOR RELIEF**
**(Declaratory Judgment of Invalidity and Unenforceability of the '905 Registration)**

56. Step2 repeats and incorporates by reference the allegations set forth in the foregoing paragraphs.

57. The '905 Registration is invalid and unenforceable at least because the purported trade dress (1) comprises matter that, as a whole, is functional; (2) is not inherently distinctive and has not acquired distinctiveness; (3) fails to function as a trademark, i.e., does not function as an identifier of the source of Defendant Ledge Lounger's goods; and (4) was obtained through fraud.

58. Because the USPTO erred in registering Defendant Ledge Lounger's trademark application, which Defendant Ledge Lounger sought and obtained through fraud, Step2 filed its own petition for cancellation of the '905 Registration. Attached collectively as Exhibit 4 is a copy of Step2's petition for cancellation, together with its exhibits.

59. There is an actual, substantial, and continuing justiciable controversy between Defendant Ledge Lounger and Step2 regarding the validity and enforceability of the '905 Registration.

## SECOND CLAIM FOR RELIEF
### (Declaratory Judgment of Noninfringement of the '905 Registration)

60. Step2 repeats and incorporates by reference the allegations set forth in the foregoing paragraphs.

61. Notwithstanding the invalidity and unenforceability of the '905 Registration, Step2's Vero Pool Lounger does not infringe the '905 Registration.

62. That is, Step2's Vero Pool Lounger is not likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval with respect to Step2, Defendant Ledge Lounger, or Defendant Ledge Lounger's goods.

63. There is an actual, substantial, and continuing justiciable controversy between Defendant Ledge Lounger and Step2 regarding Step2's alleged infringement.

## THIRD CLAIM FOR RELIEF
### (Tortious Interference)

64. Step2 repeats and incorporates by reference the allegations set forth in the foregoing paragraphs.

65. When Defendant Ledge Lounger submitted its infringement reports with Amazon regarding Step2's Vero Pool Lounger, Defendant Ledge Lounger knew that Step2 had a business

relationship with Amazon and that Step2 had existing and prospective business relationships with Amazon's customers.

66. Defendant Ledge Lounger submitted its infringement reports with Amazon in bad faith with the intentional and improper purpose to prevent sales and stymie Step2's business relationships.

67. Step2 has been damaged by Defendant Ledge Lounger's tortious interference and is entitled both to monetary relief—including lost profits—in an amount to be determined at trial and to equitable relief from the Court to stop the current harm caused by Defendant Ledge Lounger's misconduct and to prevent Defendant Ledge Lounger from causing similar harm in the future.

## FOURTH CLAIM FOR RELIEF
**(Defamation)**

68. Step2 repeats and incorporates by reference the allegations set forth in the foregoing paragraphs.

69. The infringement reports from Defendant Ledge Lounger to Amazon regarding Step2's Vero Pool Lounger were false.

70. Defendant Ledge Lounger knew the reports were false.

71. Step2 has been damaged by Defendant Ledge Lounger's defamatory statements and is entitled both to monetary relief—including lost profits—in an amount to be determined at trial and to equitable relief from the Court to stop the current harm caused by Defendant Ledge Lounger's misconduct and to prevent Defendant Ledge Lounger from causing similar harm in the future.

## PRAYER FOR RELIEF

WHEREFORE, Step2 prays for judgment and relief against Defendant Ledge Lounger, including:

A. Declaring that the '905 Registration is invalid and unenforceable;

B. Declaring that Step2 has not infringed the '905 Registration;

C. Awarding Step2 damages attributable to Defendant Ledge Lounger's wrongful conduct, together with pre-judgment and post-judgment interest;

D. Awarding Step2 its costs and reasonable attorneys' fees;

E. Entering permanent and preliminary injunctive relief under the Court's equitable authority, including ordering Defendant Ledge Lounger to take corrective measures to mitigate the irreparable harm it has caused Step2 and to ensure that Defendant Ledge Lounger causes no future irreparable harm to Step2; and

F. Such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff Step2 demands a trial by jury for all issues so triable.

Dated: May 6, 2024

Respectfully submitted,

s/ John F. Bennett
John F. Bennett (0074506)
Paul J. Linden (0083699)
Ava M. Abner (0100384)
FROST BROWN TODD LLP
301 East Fourth Street, Suite 3300
Cincinnati, OH 45202
513-651-6423
jbennett@fbtlaw.com
plinden@fbtlaw.com
aabner@fbtlaw.com

Attorneys for Plaintiff
THE STEP2 COMPANY, LLC

0153749.0787617  4875-5084-7932v1