# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| The Step2 Company, LLC<br><br>                **Plaintiff,**<br><br>v.<br><br>**Ledge Lounger, Inc. and<br>Christopher Anderson**<br><br>                **Defendants.** | **Case No. 5:24-cv-807**<br><br>**Jury Trial Demanded** |

## LEDGE LOUNGER'S MOTION TO DISMISS
## FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM

Now comes Ledge Lounger, Inc. ("Ledge Lounger"), by and through counsel, and hereby moves under Fed. R. Civ. P. 12(b)(2) to dismiss all claims against Ledge Lounger for lack of personal jurisdiction. Ledge Lounger also moves under Fed. R. Civ. P. 12(b)(6) to dismiss Step2's tortious interference, defamation, fraudulent trademark registration, and attempted monopolization claims for failure to state a claim.

A Memorandum in Support is attached hereto.

Dated: August 26, 2024        Respectfully submitted,

                                By: */s/ Matthew P. Becker*
                                   Drew H. Campbell (0047197)
                                   dcampbell@brickergraydon.com
                                   BRICKER GRAYDON
                                   100 South Third Street
                                   Columbus, OH 43215
                                   Tel. (614) 227-2300
                                   Fax: (614) 227-2390

Scott A. Burow (*admitted pro hac vice*)
Illinois Bar No. 6242616
sburow@bannerwitcoff.com
Matthew P. Becker (admitted *pro hac vice*)
Illinois Bar No. 6255614
mbecker@bannerwitcoff.com
Christian T. Wolfgram (admitted *pro hac vice*)
Illinois Bar No. 6333565
cwolfgram@bannerwitcoff.com
BANNER & WITCOFF, LTD.
71 S. Wacker Drive, Suite 3600
Chicago, IL 60606
Telephone: (312) 463-5000
Facsimile: (312) 463-5001

ATTORNEYS FOR DEFENDANT
LEDGE LOUNGER, INC.

## <u>TABLE OF CONTENTS</u>

**MEMORANDUM IN SUPPORT** ................................................................................................1

**I.      INTRODUCTION AND BACKGROUND FACTS** ........................................................1

**II.     STATEMENT OF THE ISSUES** ....................................................................................2

**III.    SUMMARY OF THE ARGUMENT** ..............................................................................3

**IV.     ARGUMENT** ..................................................................................................................4

   **A.     The FAC Fails to Set Forth a *Prima Facie* Basis for Personal Jurisdiction** .....4

      **1.     The FAC Fails to Allege that Ledge Lounger Has Sufficient Minimum Contacts with Ohio** ..............................................................................5

      **2.     Alleged Injury in the Forum Is Insufficient to Satisfy Due Process** .....7

   **B.     Step2 Failed to Plead Plausible Claims for Relief** ...........................................9

      **1.     Tortious Interference (Fourth Claim)** .................................................10

      **2.     Defamation (Fifth Claim)** ...................................................................12

      **3.     Step2 Failed to Plead a Plausible Claim Under 15 U.S.C. § 1120 (Sixth Claim)** .................................................................................................14

      **4.     Attempted Monopolization (Seventh Claim)** .......................................19

**V.      CONCLUSION** ...........................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*3Point Distribution LLC v. Cafepress.com, Inc.*,
    Case No. SACV 07-432, 2008 WL 11341309 (C.D. Cal. 2008)............................................18

*American Council of Cert. Podiatric Physicians & Surgeons v. American Bd. of Podiatric Surgery, Inc.*,
    185 F.3d 606 (6th Cir.1999) ...........................................................................................19

*Amway Corp. v. Kope Food Prods., Inc.*,
    840 F.Supp. 78 (E.D. Mich. 1993).......................................................................................6

*Anthony List v. Driehaus*,
    779 F.3d 628 (6th Cir. 2015) ............................................................................................12

*Ass'n of Cleveland Fire Fighters v. City of Cleveland*,
    502 F.3d 545 (6th Cir. 2007) .......................................................................................10, 16

*Aureflam Corp. v. Pho Hoa Phat I, Inc.*,
    375 F.Supp.2d 950 (N.D. Cal. 2005) ..................................................................................18

*Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*,
    552 F.3d 1324 (Fed. Cir. 2009) ...........................................................................................6

*Baldwin v. adidas America, Inc.*,
    No. C2-02-265, 2002 WL 2012562 (S.D. Ohio July 29, 2002) .............................................13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................................................9

*Benton Production Enters., Inc. v. Motion Media*,
    125 F.3d 855 (6th Cir. 1997)..............................................................................................14

*Brana v. Moravcik*,
    No. 20-4057, 2021 WL 4771008 (6th Cir. May 18, 2021) ................................................5, 8

*Cadle Co. v. Schlichtmann*,
    123 F. App'x 675 (6th Cir. 2005) ...............................................................................6, 7, 13

*Calphalon Corp. v. Rowlette*,
    228 F.3d 718 (6th Cir. 2000) ...............................................................................................6

*Dadbod Apparel LLC v. Hildawn Design LLC*,
    No. 2-24-cv-00188, 2024 WL 1886497 (N.D. Cal. Apr. 30, 2024)..........................................9

*Dougherty v. Esperion Therapeutics, Inc.*,
    905 F.3d 971 (6th Cir. 2018) .............................................................................................10

*Durnell's RV Sales, Inc. v. Jeff Couch's Campers, LLC*,
    Case No. 22-CV-242, 2023 WL 1070235 (S.D. Ohio Jan. 27, 2023) ...............................16, 18

*English Tea Shop USA v. Hall*,
    Civil Action No. 3:20-cv-3453-B (N.D. Tex. May 17, 2021)..................................................9

*Erie County Farmers' Ins. Co. v. Crecelius*,
  122 Ohio St. 210 (1930) ................................................................................13

*Etekcity Corp. v. Devine LEDS Ltd.*,
  Case No. SACV-19-1246, 2019 WL 7945607 (C.D. Cal. Oct. 30, 2019) ............6, 9

*Gilbert/Robinson, Inc. v. Carrie Beverage-Mo., Inc.*,
  989 F.2d 985 (8th Cir. 1993) ....................................................................16, 18

*GMA Accessories, Inc. v. Idea Nuova, Inc.*,
  157 F.Supp. 2d 234 (S.D.N.Y. 2000) ..............................................................10

*Heckler & Koch, Inc. v. German Sport Guns GmbH*,
  71 F.Supp.3d 866 (S.D. Ind. 2014) ................................................................16

*Inwood Labs., Inc. v. Ives Labs., Inc.*,
  456 U.S. 844 (1982) ....................................................................................15

*J.M. Smucker Co. v. Hormel Food Corp.*,
  526 F.Supp.3d 294 (N.D. Ohio 2021) ...........................................................5, 6

*Jackson v. City of Columbus*,
  194 F.3d 737 (6th Cir. 1999) ..........................................................................2

*Jaguar Land Rover Ltd. v. Bombardier Recreational Prods., Inc.*,
  Case No. 16-CV-13386, 2017 WL 2472851 (E.D. Mich. June 8, 2017) ..........10, 18

*LAK, Inc. v. Deer Creek Enter.*,
  885 F.2d 1293 (6th Cir. 1989) .........................................................................5

*League of United Latin Am. Citizens v. Bredesen*,
  500 F.3d 523 (6th Cir. 2007) .........................................................................10

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014) ....................................................................................15

*MAG IAS Holdings, Inc. v. Shmuckle*,
  854 F.3d 894 (6th Cir. 2017) .......................................................................5, 8

*Magna Int'l, Inc. v. Deco Plas, Inc.*,
  2010 WL 2044873 (N.D. Ohio May 10, 2010) ..................................................17

*Maxitrate Tratamento Termico E Controles v. Super Systems, Inc.*,
  617 Fed.Appx. 406, 409, 2015 WL 3407370 (6th Cir. May 28, 2015) ....................8

*Means v. U.S. Conference of Catholic Bishops*,
  836 F.3d 643 (6th Cir. 2016) ...........................................................................5

*MercAsia USA Ltd. v. 3BTech Inc.*,
  Case No. 3:17-CV-718, 2020 WL 3549894 (N.D. Ind. June 30, 2020) .................12

*Parker v. Winwood*,
  938 F.3d 833, 839(6th Cir. 2019) ..................................................................5, 8

*Prakash v. Altadis U.S.A Inc.*,
  2002 WL 1109918 (N.D. Ohio March 30, 2012) ...............................................13

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
   124 F.3d 430 (6th Cir. 1997) ....................................................................................19

*Re/Max Int'l., Inc. v. Realty One, Inc.*,
   173 F.3d 995 (6th Cir.1999) .....................................................................................19

*Reister v. Gardner*,
   164 Ohio St. 3d 546 (Ohio 2020).............................................................................13

*Reynolds v. Int'l Amateur Athletic Fed'n*,
   23 F.3d 1110 (6th Cir. 1994) .....................................................................................6

*San Juan Prods., Inc. v. San Juan Pools of Kan., Inc.*,
   849 F.2d 468 (10th Cir.1988) ...................................................................................17

*Serras v. First Tenn. Bank Nat'l Ass'n*,
   875 F.2d 1212 (6th Cir.1989) .....................................................................................4

*Shenzhen Wanfan Tech. Co. Ltd. v. Orbital Structures Pty Ltd.*,
   No. 23-cv-02330, 2024 WL 325339 (N.D. Ill. Jan. 29, 2024) ..................................9

*SnapPower v. Lighting Def. Grp.*,
   100 F.4th 1371 (Fed. Cir. 2024).................................................................................8

*Solo Cup Operating Corporation v. Lollicup USA, Inc.*,
   Case No. 16 C 8041, 2017 WL 3581182 (N.D. Ill. Aug. 8, 2017) ...........................17

*Spectrum Sports, Inc v. McQuillan*,
   506 U.S. 447 (1993)............................................................................................19, 20

*SunCoke Energy, Inc. v. MAN Ferrostaal Aktiengesellschaft*,
   563 F.3d 211 (6th Cir. 2009) .....................................................................................4

*Sunny Factory, LLC v. Chen*,
   No. 21 C 3648, 2022 WL 742429 (N.D. Ill. March 11, 2022) .................................13

*Superior Prod. P'ship v. Gordon Auto Body Parts Co.*,
   784 F.3d 311 (6th Cir. 2015) ...................................................................................19

*Tarrant Serv. Agency, Inc. v. Am. Standard, Inc.*,
   12 F.3d 609 (6th Cir.1993) .......................................................................................19

*Techmatic Inc. v. Plating Specialsists, Inc.*,
   Case No. 3:20-cv-01078, 2022 WL 16542106 (M.D. Tenn. Oct. 28, 2022)............20

*Therasense, Inc. v. Becton, Dickinson and Co.*,
   649 F.3d 1276 (Fed. Cir. 2011) ...............................................................................17

*Walden v. Fiore*,
   571 U.S. 277 (2014)..........................................................................................5, 7, 10

**Statutes**

15 U.S.C. § 1120............................................................................................................2, 10

15 U.S.C. § 2..................................................................................................................... 19

35 U.S.C. § 112(b) .................................................................................................................14

**Rules**

Fed. R. Civ. P. 12(b)(2) ................................................................................................i, 2, 4, 9

Fed. R. Civ. P. 12(b)(6) ................................................................................................i, 2, 4, 9

Fed. R. Civ. P. 9(b) ...............................................................................................................10

## MEMORANDUM IN SUPPORT

### I.    INTRODUCTION AND BACKGROUND FACTS

As explained below, the only alleged contact Ledge Lounger Inc. ("Ledge Lounger") has with Ohio is a single cease and desist letter sent to Plaintiff, The Step2 Company, LLC ("Step2") notifying it of Ledge Lounger's trade dress rights. That action does not establish minimum contacts with Ohio sufficient to satisfy due process considerations. Accordingly, Ledge Lounger moves to dismiss all of Step2's claims for lack of personal jurisdiction.

Ledge Lounger is a Texas corporation having its headquarters located in Texas.  ECF# 13, First Amended Complaint ("FAC"), ¶ 4. Ledge Lounger manufactures and sells outdoor products, including distinctive in-pool chaise lounge chairs. *See id.,* ¶¶ 36, 62. In 2022, the United States Patent and Trademark Office ("PTO") awarded Ledge Lounger a federal registration (U.S. Trademark Registration No. 6,932,905) (the '905 Registration) for the trade dress of its lounge furniture. FAC, ¶¶ 3, 34, Ex. 2. Christopher Anderson is the founder and former CEO of Ledge Lounger. *Id.* Step2 is a Delaware limited liability company with a principal place of business in Ohio. FAC, ¶ 2. Step2 is a manufacturer of rotational molded plastic goods. *Id.*, ¶ 9. In 2023, Step2 expanded its product line to pool furniture, including the Vero Pool Lounger chaise lounge. *Id.*, ¶¶ 10-11.

On April 3, 2024, counsel for Ledge Lounger sent Step2 correspondence identifying Ledge Lounger's federally registered trade dress and informing Step2 that its Vero Pool Lounger infringes Ledge Lounger's trade dress. FAC, ¶ 70, Ex. A. On April 19, 2024, counsel for Ledge Lounger submitted an on-line form to Amazon to allege that Step2's Vero Pool Lounger chaise infringed Ledge Lounger's registered trade dress. FAC, ¶ 72, Ex. B. Amazon is based in Seattle, Washington. *See* https://www.aboutamazon.com/workplace/corporate-offices. On April 23, 2024, Amazon informed Ledge Lounger it had "reviewed your report and removed the infringing

- 1 -

content" following its investigation. Ex. C (Amazon's report notes that its "team only investigates one type of infringement per submission ...."); *see* FAC, ¶ 80.[1]

On May 6, 2024, Step2 filed a Complaint which alleged four claims against Ledge Lounger: (1) declaratory judgment of invalidity and unenforceability of its trademark registration, (2) declaratory judgment of noninfringement, (3) tortious interference, and (4) defamation. ECF# 1, Complaint, ¶¶ 56-71. In response, on July 8, 2024, Ledge Lounger moved under Fed. R. Civ. P. 12(b)(2) and Fed. R. Civ. P. 12(b)(6) to dismiss Step2's claims. ECF# 9.

On August 12, 2024, Step2 filed its FAC adding three new claims against Ledge Lounger for (1) cancellation of Ledge's federal trademark registration, (2) liability for fraudulent trademark registration under 15 U.S.C. § 1120, and (3) attempted monopolization. ECF# 13. The FAC also named Anderson as a defendant solely for the claim brought under 15 U.S.C. § 1120.

Ledge Lounger also hereby moves to dismiss Step2's tortious interference, defamation, fraudulent trademark registration, and attempted monopolization claims for failure to state a claim.

## II.    STATEMENT OF THE ISSUES

1.    Whether the Court may exercise personal jurisdiction over Ledge Lounger when it did not purposefully direct acts to the state of Ohio and the only link to the forum is Plaintiff's alleged injury in Ohio.

2.    Whether Step2 failed to state a claim that Ledge Lounger is liable for defamation or tortious interference with a business relationship because Ledge Lounger cannot, as a matter of law, be the proximate cause of Step2's injury, and because an absolute privilege applies to the

---

[1] The FAC refers to Ledge Lounger's cease and desist letter, the Amazon takedown communications, and proceedings in the PTO related to Ledge Lounger's trademark registration. These documents are properly considered part of the pleadings because they are "central to plaintiff's claims." *See Jackson v. City of Columbus*, 194 F.3d 737, 745-46 (6th Cir. 1999) ("[d]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim.").

statement.

3.      Whether Step2 failed to state a claim under 15 U.S.C. § 1120 where the FAC fails to plausibly allege that the Anderson declaration contained material false or fraudulent statements and that Ledge Lounger or Anderson intended to deceive the PTO.

4.      Whether Step2 failed to state a claim under 15 U.S.C. § 1120 when Ledge Lounger obtained its trademark registration before Step2 began selling its Vero Pool Lounger chair and the injury it allegedly suffered is based on the use of the mark, and not the registration of the mark.

5.      Whether Step2 failed to state a claim for attempted monopolization where Step2 failed to allege a relevant product and geographic market, Ledge Lounger's market share in the relevant market, or Ledge Lounger's ability to influence competition in the relevant market.

## III.    SUMMARY OF THE ARGUMENT

Ledge Lounger, a non-resident of Ohio, lacks sufficient minimum contacts with Ohio to exercise personal jurisdiction over it. *See* FAC ¶ 4. Step2 first alleges personal jurisdiction based on Ledge Lounger "causing tortious interference in Ohio, where [it] regularly does and solicits business." FAC, ¶ 8 (citing Ohio Rev. Code § 2307.382). The only activity directed to Ohio identified in the FAC is the sending of one cease and desist letter. FAC ¶ 70. But sending a cease and desist letter alleging trade dress infringement is insufficient to establish personal jurisdiction. And Ledge Lounger's business activities in Ohio are not enforcement activities relevant to the inquiry of personal jurisdiction in the context of a declaratory judgment claim.  None of Step2's other claims arise out of Ledge Lounger doing business in Ohio or the cease and desist letter.

Finding no sufficient activities within Ohio, Step2 next premises jurisdiction over Ledge Lounger based on "an act outside this state." FAC ¶ 8 (citing Ohio Rev. Code § 2307.382). Step2 relies on: (1) a declaration Anderson submitted to the PTO in Washington, D.C., *see* FAC ¶¶ 4, 38-40, 47, 49, 56-59, 88, 91, 100, 121, 122 and (2) an infringement report submitted by Ledge

- 3 -

Lounger's counsel to Amazon in Seattle, Washington. *Id.*, ¶¶ 72, 77, 80.[2] Neither of these actions alone or in combination satisfies the minimum contacts necessary to satisfy the Due Process Clause. The FAC does not allege that the Anderson declaration was a contact with Ohio. Indeed, the declaration was submitted to the PTO in Washington, D.C. *See* FAC ¶ 4. The Amazon infringement report was not an enforcement action in Ohio, because the on-line report was directed to Amazon in Seattle, Washington. Although Step2 alleges *harm* in Ohio from Amazon's decision to take down the infringing product from Amazon's website, *see* FAC ¶ 77, *harm* to the complainant in the forum is insufficient, as a matter of law, to establish minimum contacts to exercise personal jurisdiction.

Additionally, Step2's tortious interference, defamation, fraudulent trademark registration, and attempted monopolization claims fail to state a claim for the reasons discussed below.

For at least these reasons, Step2's Complaint should be dismissed under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and Rule 12(b)(6) for failure to state a claim.

## IV.    ARGUMENT

### A.  The FAC Fails to Set Forth a *Prima Facie* Basis for Personal Jurisdiction

In the context of a Rule 12(b)(2) motion, a plaintiff bears the burden of establishing the existence of personal jurisdiction.[3] *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir.1989). And "personal jurisdiction...must be proper as to each claim." *SunCoke Energy, Inc. v. MAN Ferrostaal Aktiengesellschaft*, 563 F.3d 211, 219 (6th Cir. 2009).

A federal court can exercise personal jurisdiction over a defendant in a diversity action if jurisdiction is (1) authorized by the law of the state in which it sits, and (2) in accordance with the

---

[2] The FAC references other lawsuits involving Ledge Lounger, FAC ¶¶ 62-63, but there are no allegations that those suits were brought in Ohio or directed to activities in Ohio.

[3] The FAC does not allege that there is general personal jurisdiction over Ledge Lounger in Ohio.

Due Process Clause of the Fourteenth Amendment. *Parker v. Winwood,* 938 F.3d 833, 839 (6th Cir. 2019). The Due Process inquiry examines whether a nonresident defendant has sufficient "minimum contacts" with the forum state such that the exercise of jurisdiction satisfies "traditional notions of fair play and substantial justice." *Id.,* (citation omitted). The Sixth Circuit applies a three-part test for personal jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Means v. U.S. Conference of Catholic Bishops*, 836 F.3d 643, 649 (6th Cir. 2016). The "failure to meet any one of the three means that personal jurisdiction may not be invoked." *LAK, Inc. v. Deer Creek Enter.*, 885 F.2d 1293, 1303 (6th Cir. 1989).

The "minimum contacts" analysis depends on the defendant's contact with the forum, "not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). The mere injury to the plaintiff in the forum is insufficient to establish personal jurisdiction. *Walden*, 571 U.S. 277, 285; *MAG IAS Holdings, Inc. v. Shmuckle*, 854 F.3d 894, 901 (6th Cir. 2017); *Parker v. Winwood*, 938 F.3d 833, 840 (6th Cir. 2019); *Brana v. Moravcik*, No. 20-4057, 2021 WL 4771008, *3 (6th Cir. May 18, 2021).

### 1. The FAC Fails to Allege that Ledge Lounger Has Sufficient Minimum Contacts with Ohio

Step2's FAC fails to set forth a prima facie case of personal jurisdiction over Ledge Lounger because it fails to allege minimum contacts with Ohio sufficient to satisfy due process.

Declaratory judgment claims arise from the activity of the defendant enforcing the alleged intellectual property within the forum. *J.M. Smucker Co. v. Hormel Food Corp.*, 526 F.Supp.3d 294, 302 (N.D. Ohio 2021) citing *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324,

1332-1333 (Fed. Cir. 2009).The only action in Ohio enforcing Ledge Lounger's trade dress rights is one cease and desist letter. FAC, ¶ 70. Sending cease and desist letters relating to trade dress infringement is insufficient to establish personal jurisdiction for declaratory judgment claims. *J.M. Smucker,* 526 F.Supp.3d at 303; *see Calphalon Corp. v. Rowlette,* 228 F.3d 718, 723 (6th Cir. 2000); *Cadle Co. v. Schlichtmann,* 123 F. App'x 675, 681 (6th Cir. 2005) (attorney demand letter to plaintiff threatening litigation does not provide basis for exercising personal jurisdiction). Subjecting an intellectual property owner to the foreign jurisdiction simply on the basis of written notice of infringement would offend traditional notices of substantial justice and fair play. *Id.; Amway Corp. v. Kope Food Prods., Inc.*, 840 F.Supp. 78, 81-82 (E.D. Mich. 1993).

Submitting an infringement report to Amazon is also not an enforcement action directed to Ohio. The reports were directed to Amazon in the state of Washington. *Etekcity Corp. v. Devine LEDS Ltd.*, Case No. SACV-19-1246, 2019 WL 7945607, *3 (C.D. Cal. Oct. 30, 2019) (dismissing for lack of personal jurisdiction finding "Plaintiff sent the letter to Amazon, located in Seattle, Washington …. which would make the letter a contact with Washington.").

None of Step2's other claims are premised on Ledge Lounger's activities *in Ohio*. Step2's non-declaratory judgment claims are premised on (i) the Anderson declaration submitted to the PTO in Washington D.C., and (ii) a communication (an infringement report) sent to Amazon in the state of Washington. Where communications form the basis of a claim, the Sixth Circuit has consistently held that "personal jurisdiction is absent when the communication was not specifically directed at the forum state." *Blessing,* 988 F.3d at 905-907 (exercising personal jurisdiction over out-of-state defendant would not comply with due process because allegedly tortious positing on social media was not specifically directed to forum); *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1114 (6th Cir. 1994) (London-based association not subject to personal jurisdiction in

Ohio where press release concerned plaintiff's activities abroad and defendant did not publish or circulate the press release in Ohio); *Cadle,* 123 F. App'x at 679 (no personal jurisdiction over non-resident defendant where publication was about Ohio resident, but publication was not "specifically target[ed] or [wa]s even directed at Ohio readers, as opposed to residents of other states.").

The FAC does not allege that Ledge Lounger made contacts with Ohio by submitting the Anderson declaration to the PTO. This is unsurprising because the PTO is in Washington D.C. Nor could Step2 plausibly claim that the declaration was about or directed at Step 2. When Anderson submitted his declaration in June 2020, Step2 was *three years* away from entering the marketplace with its Vero Pool Lounger lounge chair. FAC ¶ 11, 38.

Again, the infringement report was directed to Amazon in Washington. Although the report was about the Step2 Vero Pool Lounger product, the complained about activities were not specific to Ohio. Rather, the report complained about the Vero Pool Lounger product listing on Amazon's website which is accessible anywhere in the world. The infringement report was not Ohio-centric and has no connection to this forum other than the fact that Step2 is located in this forum. As in *Walden*, Step2 was allegedly injured in Ohio "not because anything independently occurred there, but because [Ohio] is where [Step2] chose to be." *Walden*, 571 U.S. at 290.

Accordingly, Step2 has not plead sufficient minimum contacts by Ledge Lounger *in this forum* relating to any of its claims for the court to exercise personal jurisdiction.

### 2. Alleged Injury in the Forum Is Insufficient to Satisfy Due Process

In essence, Step2 predicates personal jurisdiction over Ledge Lounger solely based on alleged injury in the forum. *See* FAC ¶¶ 82, 88. But, the Supreme Court and Sixth Circuit precedent foreclose this argument, as both have held that the mere injury to the plaintiff in the forum is insufficient to establish personal jurisdiction. *Walden*, 571 U.S. 277, 285 ("The proper question is

not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."); *MAG IAS Holdings, Inc. v. Shmuckle*, 854 F.3d 894, 901 (6th Cir. 2017); *Parker v. Winwood*, 938 F.3d 833, 840 (6th Cir. 2019) (*Walden* foreclosed that alleged willful copyright infringement in England "qualifies as purposeful activity in Tennessee because [defendant] intentionally harmed Tennessee residents."); *Brana v. Moravcik*, No. 20-4057, 2021 WL 4771008, *3 (6th Cir. May 18, 2021) ("alleged injury alone does not demonstrate a substantial connection between [defendant] and Ohio to satisfy due process."); *Blessing v. Chandrasekhar*, 988 F.3d 889, 904 (6th Cir. 2021) (alleged harm in Kentucky insufficient to exercise personal jurisdiction); *Maxitrate Tratamento Termico E Controles v. Super Systems, Inc.*, 617 Fed.Appx. 406, 409 (6th Cir. May 28, 2015) (*Walden* forecloses theory of personal jurisdiction based on where a plaintiff felt the effects of a defendant's actions).

The Court should decline Step2's invitation to follow the Federal Circuit's *SnapPower* decision. *See* FAC, ¶ 8 citing *SnapPower v. Lighting Def. Grp.*, 100 F.4th 1371 (Fed. Cir. 2024). First, *SnapPower* is not binding precedent because it applied Federal Circuit law to a patent issue whereas the Sixth Circuit's case law governs personal jurisdiction in this case. Second, *Snap Power* was incorrectly decided and the Sixth Circuit would reject the Federal Circuit's reasoning. The Federal Circuit concluded that "*intending effects that would be felt in Utah*" satisfied purposeful availment. *SnapPower*, 100 F.4th at 1375. Thus, the Federal Circuit relied on the injury in Utah as the only contact with Utah. As discussed above, *Walden* forecloses this argument, as the Sixth Circuit has repeatedly held.

Finally, the Federal Circuit found its decision "consistent with our sister circuits which held extra-judicial enforcement activities, even when routed through a third party, satisfy purposeful direction." *Id.* at 1375. The sister circuit decisions cited from the Ninth and Tenth

Circuit cited in *SnapPower* are of dubious validity because all three cases were decided *before* the Supreme Court issued its *Walden* decision which rejected the proposition that injury in a forum is sufficient to establish personal jurisdiction.

Instead, this Court should follow the majority of courts that have addressed this issue and find that infringement reports (*i.e.* takedown letters) directed to out-of-forum website providers do not constitute purposeful acts directed to the forum sufficient to exercise personal jurisdiction under state long-arm statutes. *Dadbod Apparel LLC v. Hildawn Design LLC*, No. 2-24-cv-00188, 2024 WL 1886497, *4-5 (N.D. Cal. Apr. 30, 2024) (Amazon takedown actions did not constitute purposeful direction in California); *Shenzhen Wanfan Tech. Co. Ltd. v. Orbital Structures Pty Ltd.*, No. 23-cv-02330, 2024 WL 325339, *4 (N.D. Ill. Jan. 29, 2024) (granting motion to dismiss, finding Court cannot exercise personal jurisdiction under Illinois long-arm statute where tortious interference claims based on Amazon takedown complaints); *English Tea Shop USA v. Hall*, Civil Action No. 3:20-cv-3453-B, *6-7 (N.D. Tex. May 17, 2021) (granting motion to dismiss for lack of personal jurisdiction because Amazon takedown notices not purposely directed to Texas); *Etekcity,* 2019 WL 7945607 at *3 (granting motion to dismiss for lack of personal jurisdiction, finding infringement notice to Amazon was directed to Washington and not the forum). The reasoning in these decisions aligns with the *Walden* decision and Sixth Circuit precedent applying it.

For at least these reasons, Ledge Lounger requests that this court dismiss all claims against it under Rule 12(b)(2) for lack of personal jurisdiction.

**B.  Step2 Failed to Plead Plausible Claims for Relief**

To survive a Rule 12(b)(6) motion to dismiss, a pleading must contain sufficient facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). The factual allegations "must do more than

create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement to relief.*" *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original). Showing entitlement to relief "'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*).

The heightened pleading standard of Fed. R. Civ. P. 9(b) applies to allegations of fraudulent registration of trademarks under 15 U.S.C. § 1120 and cancellation claims based on fraud. *Jaguar Land Rover Ltd. v. Bombardier Recreational Prods., Inc.*, Case No. 16-CV-13386, 2017 WL 2472851, at *1 (E.D. Mich. June 8, 2017) The heightened pleading standard applies to each element of the fraud claim, *GMA Accessories, Inc. v. Idea Nuova, Inc.*, 157 F.Supp.2d 234, 243 (S.D.N.Y. 2000), and requires that a claim 1) "specify the statements that the [pleader] contends were fraudulent," 2) "identify the speaker," 3) "state where and when the statements were made," and 4) "explain why the statements were fraudulent." *Dougherty v. Esperion Therapeutics, Inc.*, 905 F.3d 971, 978 (6th Cir. 2018).

### 1. Tortious Interference (Fourth Claim)

To prove tortious interference with a business relationship requires a plaintiff to show: "(1) a business relationship, (2) the wrongdoer's knowledge thereof, (3) an intentional interference causing a breach or termination of the relationship, and (4) damages ...." *NOCO*, 35 F.4th at 482 quoting *Westfall Auto Sales, LLC v. Zurich Am. Ins. Co.*, 2021 WL 5298540, at *4 (6th Cir. Nov. 15, 2021). Step2 must also prove that Ledge is the proximate cause of its alleged injury. *Id.* at 481.

### a. Ledge Lounger's Infringement Report is Not the Proximate Cause of Step2's Alleged Injury

Step2's tortious interference claim fails to state a plausible claim because, under binding Sixth Circuit precedent, Ledge Lounger cannot be the proximate cause of Step2's injury. *NOCO*

addressed, under Ohio law, whether a party who submitted reports to Amazon that resulted in products being removed from Amazon's platform could be liable for defamation and tortious interference. *NOCO*, 35 F.4th at 476. In *NOCO*, the Sixth Circuit affirmed summary judgment of no liability, finding that the plaintiff failed to show that the filer of the Amazon complaint was the proximate cause of its injury. *Id.* at 480. The Sixth Circuit reasoned in relevant part:

> Here, Amazon conducted its own independent investigation. And it made the decision to deactivate OJC's account based on that investigation. Amazon's anti-counterfeiting policy tells us just as much. In its policy, Amazon explicitly states that it takes actions based on its own review. And Amazon sent multiple warning emails to OJC before deactivating OJC's account. This shows that Amazon did, in fact, investigate the claims and that NOCO had no role in the investigation or the ultimate decision. OJC provided no evidence to the contrary. Thus, even if NOCO's complaint alone set off Amazon's investigation, Amazon had the chance to "eliminate the hazard" and didn't. So Amazon's independent investigation was an intervening cause that relieves NOCO of any responsibility.

*Id.* at 487.

As in *NOCO*, Amazon's independent investigation of trade dress infringement was an intervening cause that relieves Ledge Lounger of any responsibility as a matter of law. *See* Ex. C. Amazon's report to Ledge Lounger made clear that Amazon reviewed and investigated the infringement before removing Step2's Vero Pool Lounger chair from its platform. Ex. C.

### b. The FAC Fails to Allege a Breach of Termination of a Relationship

The FAC alleges that Ledge's submission of the infringement report to Amazon harmed its relationship with Amazon and Amazon customers, FAC ¶ 111-112, but fails to identify any alleged breach or termination of a relationship.[4] *NOCO,* 35 F.4th at 482. As such, Ledge Lounger cannot be liable for tortious interference as there has been no alleged breach or termination. *See MercAsia USA Ltd. v. 3BTech Inc.*, Case No. 3:17-CV-718, 2020 WL 3549894 (N.D. Ind. June

---

[4] The FAC also fails to plead a plausible tortious interference claim because it failed to identify any specific Amazon existing or prospective customer that Ledge Lounger allegedly knew of and interfered with. *See* FAC, ¶ 111.

30, 2020) (tortious interference claim based on party sending infringement reports to Amazon had "no chance of success on the merits" because Amazon's policies allowed it to remove products for any reason).

### 2. Defamation (Fifth Claim)

As explained below, Step2 failed to plead a plausible claim of defamation under Ohio state law which requires: "(1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the requisite degree of fault ...." *NOCO,* 35 F.4th at 482 quoting *Anthony List v. Driehaus*, 779 F.3d 628, 632-33 (6th Cir. 2015).

### a. Step2 Failed to Plead Facts Demonstrating a Plausible Claim that the Amazon Takedown Notice was False or Defamatory

The sole basis for Step2's defamation claim is that the "infringement reports from Defendant Ledge Lounger to Amazon regarding Step2's Vero Pool Lounger were false" and that Ledge Lounger "knew the reports were false." FAC, ¶¶ 116-17. But the FAC does not identify any statement of fact in the Amazon takedown notice that was false or defamatory. *See* FAC ¶ 72 (identifying *allegations*). .

Indeed, the factual statements to Amazon were unquestionably true. The Amazon Report Infringement form truthfully identified (i) the product in question based on its Amazon Standard Identification Number(s), (ii) the owner of the intellectual property (Ledge Lounger, Inc.), and (iii) Ledge Lounger's trade dress is registered and its registration number. The form also included Ledge Lounger's belief of "alleged intellectual property infringements," Ex. B, at 1. Amazon investigated Ledge Lounger's allegations and agreed with Ledge Lounger's infringement allegations. Ex. C. Step2's disagreement with Ledge Lounger's (and Amazon's) belief that the

Vero Pool Lounger infringes the registration does not show any false statement of fact was made to Amazon.

>    **b.  Step2 Failed to Plead Facts Showing Ledge Lounger's Infringement Report was the Proximate Cause of Step2's Alleged Injury**

Step2's defamation claim, like its tortious interference claim, also fails to state a plausible claim because Ledge Lounger was not the proximate cause of the alleged injury. As explained above, Amazon's independent investigation of trade dress infringement was an intervening cause that relieves Ledge Lounger of any responsibility. *NOCO,* 35 F.4th at 487.

>    **c.  Statements to Amazon Are Absolutely Privileged**

Under Ohio law, parties have absolute immunity from defamation suits arising out of statements made during and relevant to litigation. *Cadle*, 123 F. App'x at 681 citing *Erie County Farmers' Ins. Co. v. Crecelius*, 122 Ohio St. 210 (1930); *see also Reister v. Gardner*, 164 Ohio St. 3d 546, 548 (Ohio 2020). The litigation privilege applies to pre-suit communications as well as communications in litigation. *Cadle*, 123 F. App'x at 681 (demand letter threatening litigation did not support actionable defamation claim). Courts have extended the litigation privilege to statements in quasi-legal proceedings. *See Baldwin v. adidas America*, *Inc.*, No. C2-02-265, 2002 WL 2012562, *3 (S.D. Ohio July 29, 2002); *see also Prakash v. Altadis U.S.A Inc.*, 2002 WL 1109918, *11 (N.D. Ohio March 30, 2012) ("trademark policing activities cannot form the basis of any of Plaintiff's state law claims" finding absolute privilege applied).

Ledge Lounger's infringement reports to Amazon are protected by an absolute privilege. *See Sunny Factory, LLC v. Chen*, No. 21 C 3648, 2022 WL 742429, * 2-3 (N.D. Ill. March 11, 2022) (granting motion to dismiss defamation claims based on Amazon copyright infringement reports finding reports are communications preliminary to a judicial proceeding and absolutely

privileged under Illinois law). Accordingly, a defamation claim cannot be premised on a statement in an Amazon infringement report. *Id.*

### 3. Step2 Failed to Plead a Plausible Claim Under 15 U.S.C. § 1120 (Sixth Claim)

Step2's fraudulent trademark registration claim fails to set forth facts sufficient to show a plausible claim for relief. To sustain a claim for damages under § 1120, Step2 must show that Ledge Lounger (1) made a false or fraudulent representation of a material fact in securing the mark; (2) that Ledge Lounger knew or believed that this representation was false; (3) that it intended to induce the PTO to rely on this misrepresentation; (4) that there was reasonable reliance on the misrepresentation; and (5) that Step2's damages were proximately caused by the alleged misrepresentation. *Benton Production Enters., Inc. v. Motion Media*, 125 F.3d 855, at *3 (6th Cir. 1997); *Jaguar*, 2018 WL 11352593, at *2.

#### a. Anderson Truthfully Stated that the Wave Form Trade Dress is Not the Subject Matter of the '975 Patent

The FAC failed to plausibly allege that Anderson's statement that "the applied-for-mark … has been the subject matter of a design or utility patent" was false. FAC, ¶¶ 39-40. Step2's claim alleges that this statement is false because portions of the '975 Patent specification "disclose and describe the functionality of Ledge's design." *Id.*, ¶¶ 40-46. The cited passages do not demonstrate a plausible claim that Anderson's statement is false because the applied-for-mark was ***not*** the subject matter of the '975 Patent. The subject matter of the '975 Patent is a threaded plug system, which is consistent with its title and claims of the '975 Patent. Ex. 4 ("Threaded Plugs in Furniture Being Partially Submerged"). The *claims*, not the specification or figures, dictate the subject matter of a patent, 35 U.S.C. § 112(b) ("The specification shall conclude with one or more claims particularly pointing out and distinctly *claiming the subject matter which the inventor …* regards as the invention.) (emphasis added). The FAC fails to make any allegation based on the

*claims* in the '975 patent. Indeed, none of the claims of the '975 Patent recite or refer to a wave form for a chair. Ex. 4, Columns 9-10. In fact, the shape is not important to the invention, as "[d]esigns for said chair 100*b* … may comprise variations on the shape and dimensions …". *Id.,* 4:52-54. Thus, Mr. Anderson's statement was true.

### b. Step2 Failed to Explain Why a Statement Relating to the Design of the Trade Dress was False or Fraudulent

Step2 alleges that Anderson made a false statement relating to whether the design of the trade dress "was developed separate from the function of lounge and outdoor furniture." FAC, ¶¶ 47-48. Step2 fails to explain why this statement is false. *Doughterty,* 905 F.3d at 978. Instead, Step2 merely avers that the statement is inconsistent with interviews Anderson gave relating to the development of Ledge Lounger's design. *See* FAC, ¶¶ 49-55. This is insufficient to support a fraud based claim.

Step2's pleading also ignores that "functionality" for purposes of trade dress considers whether "a product feature is functional if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n. 10 (1982). Step2's pleading fails to allege facts explaining why Anderson's statement is false under the correct legal standard for functionality, especially in light of other statements in his declaration stating the design is not essential and actually increased costs. Ex. 4, ¶¶ 30-34. This deficiency requires dismissing Step2's fraud based claims.

### c. The Fraud Claims Fail to Plausibly Allege "But For" Materiality

Step2's fraud-based claims fail to allege facts to plausibly show that Ledge's registration would not have issued "but for" the alleged misrepresentations. *Gilbert/Robinson, Inc. v. Carrie Beverage-Mo., Inc.*, 989 F.2d 985, 992 (8th Cir. 1993), abrogated on other grounds by *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 124-25 (2014) ("but for" standard of

materiality applies when the party claiming fraud seeks damages under 15 U.S.C. § 1120). "As a general matter, a misrepresentation is material only if the registration would not have issued if the truth were known to the examiner." *Durnell's RV Sales, Inc. v. Jeff Couch's Campers, LLC*, Case No. 22-CV-242, 2023 WL 1070235, at *5 (S.D. Ohio Jan. 27, 2023); *see also Heckler & Koch, Inc. v. German Sport Guns GmbH,* 71 F.Supp.3d 866, 904 (S.D. Ind. 2014). The materiality of a misrepresentation to the PTO is a question of law for the Court. *Heckler*, 71 F.Supp.3d at 905 n. 35.

Step2's claims assert that Anderson's statements are "material," *see* FAC, ¶¶ 58, 100, but simply labeling them as "material" is insufficient to show entitlement to relief. *Ass'n of Cleveland Fire Fighters,* 502 F.3d at 548. Indeed, the PTO records demonstrate why neither of Anderson's statements were "but for" material to issuance of the registration. The examining attorney was required to consider the '975 Patent, which was submitted in a letter of protest, prior to issuing Ledge Lounger's trade dress registration. Ex. D, at 1. The examining attorney also was required to consider Ledge Lounger publications, also submitted in the letter of protest, containing statements allegedly relating to the functionality of the trade dress design (e.g., partially submergible, comfort, designed to be put in a pool). Ex. D, at 19, 25, 30, 37. The examining attorney reviewed this evidence and ultimately found the trade dress non-functional and issued the registration. Thus, the registration would have issued regardless of the alleged misrepresentations.

### d. Step2 Fails to Allege that Ledge Lounger Knowingly Made a False Misrepresentations With Intent to Deceive the PTO

Step2 failed to plead sufficient facts to plausibly show Ledge Lounger *knew* that the two alleged representation were false and *intended* to deceive the PTO. *Benton*, 125 F.3d 855, at *3; *see also In re Bose*, 580 F.3d at 1244-45 (holding "that a trademark is obtained fraudulently under the Lanham Act only if the applicant … knowingly makes a false, material representation …").

- 16 -

Furthermore, "[i]ntent to deceive" must be "the single most reasonable inference to be drawn from the evidence," but here there is no allegations supporting specific intent. *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011). There is no room for speculation, inference or surmise, however, when assessing trade mark fraud claims. *In re Bose Corp.*, 580 F.3d at 1243.

Step2's claim fails to set forth any facts to support the naked assertion that "Ledge Lounger … knew that both the Patent Statement and Development Statement were false" and "submitted … with intent to deceive the USPTO." FAC, ¶¶ 56-57. Anderson submitted his declaration believing the statements were true by "declar[ing] that the facts set forth in this application and declaration are true; all statements made of his knowledge are true …." Ex. 3, at 9. Because declarations submitted in connection with trademark registration are "phrased in terms of subjective belief," it is "extremely difficult to prove fraud so long as the signer has an honestly held, good faith belief" in the position. *Magna Int'l, Inc. v. Deco Plas, Inc.*, 2010 WL 2044873, at *10 (N.D. Ohio May 10, 2010); *San Juan Prods., Inc. v. San Juan Pools of Kan., Inc.*, 849 F.2d 468, 472 (10th Cir.1988); 6 McCarthy, *supra,* § 31:77 ("If applicant has a good faith belief … then the oath cannot be fraudulent."). Step2 pleads no facts that would undermine Anderson's good faith belief or show deceptive intent.

Furthermore, the PTO had before it Ledge Lounger's '975 Patent and marketing materials and was in position to study them and to disagree with Anderson's statements. *Solo Cup Operating Corporation v. Lollicup USA, Inc.*, Case No. 16 C 8041, 2017 WL 3581182, *3 (N.D. Ill. Aug. 8, 2017) (statements by trademark applicant which the trademark examiner was in position to agree or disagree with by studying the alleged functionality of a patent did not give rise to reasonable inference of fraudulent intent).

### e.  Step2 Failed to Plead Consequential Damages from the Registration

For a §1120 claim, "it is not enough … merely to establish fraud in the registration"; Step2 "must also show that it sustained some damage in consequence of the fraud." *Jaguar*, 2017 WL 2472851, at *2 (citations omitted). The injury asserted "must be a proximate result of the false or fraudulent registration." *Id.*, citing *San Juan Prod.,* 849 F.2d at 473. "The injury and damages arising from the fraud must be 'clearly articulated.'" *Id.* (quotation omitted).

Step2's § 1120 claim also fails to state a plausible claim of damages resulting from the *registration* of Ledge Lounger's trademark at the time of the registration. Instead, Step2 alleges injury based on the *use* of the registration. FAC, ¶ 122 ("Defendants Ledge Lounger and Anderson used the '905 Registration to harm Step2."); *see also id.*, ¶¶ 75-84. The Sixth Circuit has not addressed the scope of § 1120, but other courts have found that the injury must arise from and at the time of the registration rather than from later use. *Gilbert/Robinson, Inc. v. Carrie Beverage-MO, Inc.*, 989 F.2d 985, 990 (8th Cir. 1993); *3Point Distribution LLC v. Cafepress.com, Inc.*, Case No. SACV 07-432, 2008 WL 11341309, *2 (C.D. Cal. 2008) (no cognizable Lanham Act injury where alleged injury occurred after registration); *Aureflam Corp. v. Pho Hoa Phat I, Inc.*, 375 F.Supp.2d 950, 955 (N.D. Cal. 2005) (same). Here, Ledge Lounger obtained the '905 Registration in 2022, FAC ¶ 34, Ex. 2, which is well *before* Step2 entered the market with its Vero Pool Lounger. FAC, ¶¶ 11-12. Thus, Step2 cannot demonstrate injury at the time of the registration.

Furthermore, Step2 failed to "clearly articulate" its injuries. The claim simply states "Step2 has been damaged by Defendants' procurement and use of the '905 Registration and is entitled both to monetary relief—including lost profits—from both Defendants in an amount to be determined at trial …" FAC, ¶ 123. This is a bare legal conclusion which the court must reject under *Iqbal*. *See Durnell's*, 2023 WL 1070235, at *7 (counterclaim alleging "damage[]" due to registration was

a "bare legal conclusion" and disregarded). Notably, Step2 fails to articulate how the allegedly fraudulent *registration* allegedly caused its lost profits.

Accordingly, Step2 failed to plead a plausible claim for relief for its fraud based claim.

### 4.    Attempted Monopolization (Seventh Claim)

For an attempted monopolization claim under 15 U.S.C. § 2, a plaintiff must show: "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Spectrum Sports, Inc v. McQuillan*, 506 U.S. 447, 456 (1993). Sherman "§2 claims [] requires an initial identification of the relevant markets." *Superior Prod. P'ship v. Gordon Auto Body Parts Co.*, 784 F.3d 311, 318 (6th Cir. 2015). The relevant product market includes products that have reasonable interchangeability with Ledge Lounger's lounge chair.  *See American Council of Cert. Podiatric Physicians & Surgeons v. American Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 622 (6th Cir.1999). The relevant geographic market consists of where sellers operate and where purchasers can predictably turn for supplies. *Re/Max Int'l., Inc. v. Realty One, Inc.*, 173 F.3d 995, 1016 (6th Cir.1999) (citation omitted).  Market strength that approaches monopoly power (the ability to control prices and exclude competition) is a necessary element for showing a dangerous probability of achieving monopoly power. *See Tarrant Serv. Agency, Inc. v. Am. Standard, Inc.*, 12 F.3d 609, 615 (6th Cir.1993).

The FAC fails to plead that Ledge Lounger has market strength that approaches monopoly power in a relevant product and geographic market. Step2 alleges the product market is for "in-pool chaise loungers," *see* FAC ¶¶ 89, 129, but failed to identify products that are identical to, or substitutes for, the defendant's products. *See White & White,* 723 F.2d at 500; *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436-37 (6th Cir. 1997) (failure to define its proposed relevant market with reference to the rule of interchangeability and cross-elasticity of demand is

legally insufficient). Step2 also failed to plead a specific geographic market. *See* FAC ¶ 129. These failures are fatal to the § 2 claims. *See Spectrum Sports*, 506 U.S. at 459.

Step2 also fails to adequately plead facts that Ledge Lounger has a dangerous probability of achieving monopoly power.[5] The FAC makes one passing reference to "market share," FAC ¶ 61 ("threatening Defendant Ledge Lounger's market share ..."), but Step2's general allegation is insufficient to establish Ledge Lounger's market share for purposes of showing potential monopoly power. *Techmatic Inc. v. Plating Specialists, Inc.*, 2022 WL 16542106, *17 (M.D. Tenn. Oct. 28, 2022) (collecting cases finding conclusory allegations of market share insufficient to state plausible attempted monopolization claim); *US Ring Binder v. World Wide Stationary Mfg.*, 804 F. Supp. 2d 588, (N.D. Ohio 2011) (granting motion to dismiss where complaint failed to plead with sufficient particularity the relevant product market, and failed to plausibly allege the potential exercise of monopoly power). Nor has Step2 alleged anything regarding Ledge Lounger's capacity to impact the overall market, such as "the ability to control prices and exclude competition." *See Tarrant,* 12 F.3d at 615. For these reasons, Step2's antitrust claim should be dismissed.

## V.    CONCLUSION

For the foregoing reasons, the Court should find that it lacks personal jurisdiction over Ledge Lounger and that the FAC fails to set forth a plausible claim for tortious interference, defamation, liability under 15 U.S.C. § 1120, and attempted monopolization.

Dated: August 26, 2024                    Respectfully submitted,


By:  */s/ Matthew P. Becker*
       Drew H. Campbell (0047197)
       dcampbell@brickergraydon.com

---

[5] The FAC asserts "Ledge Lounger has a dangerous probability of obtaining monopoly power," FAC § 130, but the "recitation of the elements of a cause of action will not do." *Ass'n of Cleveland,* 502 F.3d at 548.

BRICKER GRAYDON
100 South Third Street
Columbus, OH 43215
Tel. (614) 227-2300
Fax: (614) 227-2390

Scott A. Burow (*admitted pro hac vice*)
Illinois Bar No. 6242616
sburow@bannerwitcoff.com
Matthew P. Becker (admitted *pro hac vice*)
Illinois Bar No. 6255614
mbecker@bannerwitcoff.com
Christian T. Wolfgram (admitted *pro hac vice*)
Illinois Bar No. 6333565
cwolfgram@bannerwitcoff.com
BANNER & WITCOFF, LTD.
71 S. Wacker Drive, Suite 3600
Chicago, IL 60606
Telephone: (312) 463-5000
Facsimile: (312) 463-5001

ATTORNEYS FOR DEFENDANT
LEDGE LOUNGER, INC.

## LOCAL RULE 7.1 CERTIFICATE OF TRACK AND MEMORANDUM LENGTH

I, Matthew P. Becker, certify that this case has not been assigned a specific track. Accordingly, Defendant believes this is an unassigned case having a 20 page limit for memorandum supporting its dispositive motions. LR 7.1 (f). The foregoing memorandum adheres to the page limitations set forth in LR 7.1(f).

*/s/ Matthew P. Becker*
Attorney for Defendant

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 26, 2024, a true and accurate copy of DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM AND MEMORANDUM IN SUPPORT was filed with the court through its ECF filing system, thereby providing notice to all counsel of record.

*/s/ Matthew P. Becker*
Attorney for Defendant
