# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **THE STEP2 COMPANY, LLC,** | Case No. 5:24-cv-00807-DAR |
| Plaintiff, | Judge David A. Ruiz |
| v. | |
| **LEDGE LOUNGER, INC., et al.,** | |
| Defendants. | |

**PLAINTIFF THE STEP2 COMPANY, LLC'S OPPOSITION TO
<u>DEFENDANT LEDGE LOUNGER, INC.'S MOTION TO DISMISS</u>**


Dated:  September 25, 2024

**FROST BROWN TODD LLP**

John F. Bennett (0074506)
Paul J. Linden (0083699)
Ava M. Bowden (0100384)
FROST BROWN TODD LLP
301 East Fourth Street, Suite 3300
Cincinnati, OH 45202
513-651-6423
jbennett@fbtlaw.com
plinden@fbtlaw.com
abowden@fbtlaw.com

Attorneys for Plaintiff
THE STEP2 COMPANY, LLC

<u>**TABLE OF CONTENTS**</u>

**Page**

I.      PRELIMINARY STATEMENT ...................................................................................1

II.     BACKGROUND ........................................................................................................1

III.    STATEMENT OF THE ISSUES................................................................................2

IV.     THE COURT SHOULD DENY LEDGE LOUNGER'S MOTION............................3

      A.      **Ledge Lounger Is Subject to Personal Jurisdiction in Ohio** ............................3

            1.      Ledge Lounger has sufficient contacts in Ohio .................................5

            2.      Step2's claims arise from Ledge Lounger's contacts in Ohio ....................8

            3.      Exercising personal jurisdiction over Ledge Lounger is reasonable ........10

      B.      **Alternatively, Jurisdictional Discovery Is Warranted** ....................................10

      C.      **The FAC Plausibly States Claims Against Ledge Lounger** ............................12

            1.      The FAC states a claim for tortious interference .......................................12

            2.      The FAC states a claim for defamation .....................................................14

            3.      The FAC states a claim for fraudulent trademark registration .................16

            4.      The FAC states a claim for attempted monopolization ............................19

V.      CONCLUSION ........................................................................................................20

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Accord Newman v. Univ. of Dayton,*
   172 N.E.3d 1122 (Ohio Ct. App. 2021) ................................................................................ 16

*AlixPartners, LLP v. Brewington,*
   836 F.3d 543 (6th Cir. 2016) ................................................................................................. 3

*Am. Greetings Corp. v. Cohn,*
   839 F.2d 1164 (6th Cir. 1988) .............................................................................................. 10

*Amini v. Oberlin College,*
   259 F.3d 493 (6th Cir. 2001) ................................................................................................ 12

*Anthony List v. Driehaus,*
   779 F.3d 628 (6th Cir. 2015) ................................................................................................ 14

*Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.,*
   552 F.3d 1324 (Fed. Cir. 2009) .............................................................................................. 5

*Baldwin v. adidas Am., Inc.,*
   2002 WL 2012562 (S.D. Ohio July 29, 2002) ...................................................................... 15

*Bassett v. NCAA,*
   528 F.3d 426 (6th Cir. 2008) ................................................................................................ 12

*BCG Masonic Cleveland, LLC v. Live Nation Ent., Inc.,*
   570 F. Supp. 3d 552 (N.D. Ohio 2021) ................................................................................ 14

*Bird v. Parsons,*
   289 F.3d 865 (6th Cir. 2002) .................................................................................................. 8

*Bose v. Bea,*
   947 F.3d 983 (6th Cir. 2020) ......................................................................................... 15, 16

*Brenton Prod. Enterprises, Inc. v. Motion Media,*
   125 F.3d 855 (6th Cir. 1997) ................................................................................................ 16

*C.H. By and Through Shields v. United States,*
   818 F. App'x 481 (6th Cir. 2020) ......................................................................................... 10

*Chulsky v. Golden Corral Corp.,*
   583 F. Supp. 3d 1059 (S.D. Ohio 2022) ................................................................................ 3

*Dedvukaj v. Maloney,*
   447 F. Supp. 2d 813 (E.D. Mich. 2006) ................................................................................ 8

*Directv, Inc. v. Treesh,*
    487 F.3d 471 (6th Cir. 2007) ............................................................. 12

*Durnell's RV Sales, Inc. v. Jeff Couch's Campers, LLC,*
    2023 WL 1070235 (S.D. Ohio Jan. 27, 2023) ...................................... 19

*Eastman Kodak Co. v. Image Tech. Servs.*, Inc.,
    504 U.S. 451 (1992)............................................................................ 19

*Hensley v. Wester Chester Twp.,*
    2022 WL 4621432 (S.D. Ohio Sept. 30, 2022) .................................... 15

*In re Bose Corp.,*
    580 F.3d 1240 (Fed. Cir. 2009) .......................................................... 18

*Imperial Products, Inc. v. Endura Products, Inc.,*
    109 F. Supp. 2d 809 (S.D. Ohio 2000) ................................................. 4

*J.M. Smucker Co. v. Hormel Food Corp.,*
    526 F. Supp. 3d 294 (N.D. Ohio 2021)............................................. 5, 6

*KNC Invs., LLC v. Lane's End Stallions, Inc.,*
    579 F. App'x 381 (6th Cir. 2014)........................................................ 10

*LeafFilter N., LLC v. Home Craft Builders, Inc.,*
    487 F. Supp. 3d 643 (N.D. Ohio 2020)................................................. 4

*Mach. Co. v. Mohasco Indus., Inc.,*
    401 F.2d 374 (6th Cir. 1968) ................................................................ 4

*Molnarova v. Swamp Witches Inc.,*
    2024 WL 4198149 (S.D. Ohio Sept. 16, 2024) .................................... 12

*Neogen Corp. v. Neo Gen Screening, Inc.,*
    282 F.3d 887 (6th Cir. 2002) ............................................................ 4, 7

*NOCO Co. v. OJ Com., LLC,*
    35 F.4th 475 (6th Cir. 2022) ......................................................... 13, 15

*NOCO Co. v. Shenzhen Valuelink E-Com. Co.,*
    2020 WL 11626078 (N.D. Ohio Apr. 1, 2020)..................................... 11

*NOCO Co. v. Shenzhen Valuelink E-Com. Co.,*
    550 F. Supp. 3d 488 (N.D. Ohio 2021)....................................... 7, 8, 10

*Oatly AB v. D's Nats. LLC,*
    2018 WL 3496386 (S.D. Ohio July 20, 2018).................................. 16, 17, 18, 19

*Oatly AB v. D's Nats. LLC*,
  2018 WL 4625553 (S.D. Ohio Sept. 27, 2018) ................................................................ 16

*Olwin Metal Fabrication, LLC v. MultiCam, Inc.*,
  631 F. Supp. 3d 485 (S.D. Ohio 2022) ........................................................................... 10

*O'Malley v. NaphCare, Inc.*,
  101 F. Supp. 3d 742 (S.D. Ohio 2014) ........................................................................... 14

*Ricco v. Potter*,
  377 F.3d 599 (6th Cir. 2004) ......................................................................................... 12

*Scooter Store, Inc. v. SpinLife.com, LLC*,
  777 F. Supp. 2d 1102 (S.D. Ohio 2011) .................................................................. 19, 20

*SnapPower v. Lighting Def. Grp.*,
  100 F.4th 1371 (Fed. Cir. 2024) ........................................................................ 5, 6, 9, 16

*Spectrum Sports, Inc v. McQuillan*,
  506 U.S. 447 (1993) ........................................................................................................ 19

*Spirit Airlines, Inc. v. Northwest Airlines, Inc.*,
  431 F.3d 917 (6th Cir. 2005) ......................................................................................... 19

*Therasense, Inc. v. Becton, Dickinson & Co.*,
  649 F.3d 1276 (Fed. Cir. 2011) ...................................................................................... 18

*Todd v. Exxon Corp.*,
  275 F.3d 191 (2d Cir. 2001) ........................................................................................... 19

*Utzinger v. United States*,
  432 F.2d 485 (6th Cir. 1970) ................................................................................... 13, 15

*Yoga Six Franchise, LLC v. Core 6 Energy Yoga LLC*,
  2020 WL 13890223 (N.D. Ohio Sept. 30, 2020) ............................................................ 12

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,
  952 F. Supp. 1119 (W.D. Pa. 1997) .................................................................................. 7

**Statutes**
15 U.S.C. § 1120 .................................................................................................... 1, 2, 16

**Rules**
Fed. R. Civ. P. 12(b)(2) ........................................................................................................ 2

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 2, 12

Ohio Rev. Code § 2307.382(A)(4) ....................................................................................... 3

Ohio Rev. Code § 2307.382(A)(6) ....................................................................................... 3

iv

## I.    PRELIMINARY STATEMENT

Defendant Ledge Lounger, Inc. ("Ledge Lounger") made misrepresentations to the United States Patent and Trademark Office ("USPTO") regarding the functionality and distinctiveness of its purported trade dress rights to a generic design for an in-pool chaise lounge that others have used for decades. Ledge Lounger made these misrepresentations with the intent to deceive the USPTO and fraudulently obtain U.S. Trademark Registration No. 6,932,905 ("the '905 Registration"). This misconduct has stymied fair competition from Ledge Lounger's competitors—including Ohio-based Plaintiff The Step2 Company, LLC ("Step2")—and  harmed consumers (including consumers in Ohio) by limiting consumer choice and commanding inflated prices.

But Ledge Lounger has not stopped there—instead, it has systematically and repeatedly used the fraudulently obtained '905 Registration to target Step2 by submitting frivolous infringement reports to Amazon, resulting in the removal of Step2's Vero Pool Lounger from Amazon's website and causing Step2 to lose significant sales revenue.

Now Ledge Lounger seeks to avoid facing consequences for its misconduct in Ohio by moving for dismissal based on evasive arguments, flawed logic, and inapplicable legal standards. For the reasons discussed below, the Court should deny Ledge Lounger's motion or, in the alternative, grant Step2 limited jurisdictional discovery.

## II.    BACKGROUND

Step2's complaint includes four claims against Ledge Lounger: (1) declaratory judgment of invalidity and unenforceability of the '905 Registration; (2) declaratory judgment of noninfringement of the '905 Registration; (3) tortious interference; and (4) defamation.  In an amended complaint ("FAC"), Step2 added three claims against Ledge Lounger: (5) cancellation of the '905 Registration; (6) liability for fraudulent trademark registration under 15 U.S.C. § 1120;

1

and (7) attempted monopolization.[1]

Ledge Lounger filed the present motion to dismiss ("MTD") for lack of personal jurisdiction over Ledge Lounger under Fed. R. Civ. P. 12(b)(2) and failure to state a claim under Fed. R. Civ. P. 12(b)(6) only directed to Step2's tortious interference, defamation, fraudulent trademark registration, and attempted monopolization claims. Step2 opposes Ledge Lounger's motion in its entirety, and, alternatively, affirmatively moves the Court to allow jurisdictional discovery regarding the Fed. R. Civ. P. 12(b)(2) motion.

## III.     STATEMENT OF THE ISSUES

1.     Whether the Court's exercise of personal jurisdiction over Ledge Lounger is proper when Ledge Lounger purposefully directed contacts in the state of Ohio related to Step2's claims, including (i) sending a cease and desist letter for trade dress infringement to Step2 in Ohio; (ii) repeatedly targeting Ohio-based Step2 with frivolous Amazon trade dress infringement reports; (iii) continuously contacting and doing business with its at least five Ohio-based dealers; (iv) selling to customers in Ohio directly through its website; (v) selling to customers in Ohio through its Amazon storefront; and (vi) enforcing the '905 Registration against other competitors to prevent those competitors from making sales to customers in Ohio.

2.     If further information regarding Ledge Lounger's Ohio contacts is needed, whether Step2 has provided a reasonable basis to expect that discovery would reveal supporting evidence.

3.     Whether the FAC contains sufficient allegations that—when accepted as true and viewed in the light most favorable to Step2—plausibly state claims for (i) tortious interference; (ii) defamation; (iii) fraudulent trademark registration; and (iv) attempted monopolization.

---

[1] In the FAC, Step2 also stated a claim against Defendant Christopher Anderson for liability for fraudulent trademark registration under 15 U.S.C. § 1120. Anderson, who is represented by the same counsel as Ledge Lounger, moved to dismiss this claim on September 6, 2024. (Doc. 17.)

2

## IV.    THE COURT SHOULD DENY LEDGE LOUNGER'S MOTION

The Court's exercise of personal jurisdiction over Ledge Lounger is proper under both Ohio's long-arm statute and the Due Process Clause.  Moreover, the FAC plausibly states claims for tortious interference, defamation, fraudulent trademark registration, and attempted monopolization.

### A.      Ledge Lounger Is Subject to Personal Jurisdiction in Ohio

"Where, as here, the Court's subject-matter jurisdiction is based on a federal question,[2] the exercise of personal jurisdiction over a defendant is proper if it is 'both authorized by the forum State's long-arm statute and in accordance with the Due Process Clause of the Fourteenth Amendment.'"  *Chulsky v. Golden Corral Corp.*, 583 F. Supp. 3d 1059, 1071 (S.D. Ohio 2022) (quoting *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016)).  Ledge Lounger does not appear to specifically address Ohio's long-arm statute, but Step2 nevertheless satisfies it at least under each of subsections (A)(4) and (6), which confer personal jurisdiction as to causes of action that arise from Ledge Lounger's:

> (4) causing tortious injury in this state by an act or omission outside this state if the person regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state; or
>
> (6) causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when the person might reasonably have expected that some person would be injured thereby in this state.

Ohio Rev. Code § 2307.382(A)(4) and (6).

Subsection (A)(4) is satisfied because, as explained more fully below, Step2's tortious interference, defamation, fraudulent trademark registration, and attempted monopolization claims

---

[2] Ledge Lounger mistakenly believes this is a diversity action.  (MTD at 4.)  But the Court has subject-matter jurisdiction based on a combination of federal question and supplemental jurisdiction.  (FAC, ¶ 6.)

arise from Ledge Lounger's causing tortious injury to Ohio-based Step2 and to consumers in Ohio, where Ledge Lounger regularly does and solicits business through its at least five Ohio-based dealers and its sales to Ohio consumers on its website and Amazon storefront.[3]  And subsection (A)(6) is satisfied because, as explained more fully below, each of Step2's claims, including its declaratory judgment claims, arise from Ledge Lounger's causing tortious injury in Ohio to Step2 by an act outside this state committed with the purpose of injuring Ohio-based Step2 and consumers in Ohio through Ledge Lounger's purposeful and repeated submission of Amazon infringement reports, which Ledge Lounger should have expected would injure Step2 and consumers in Ohio by preventing sales of Step2's products in Ohio.  Thus, all that remains is the due process inquiry.

Due Process is satisfied if: "(1) 'the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence' to occur there; (2) 'the cause of action must arise from the defendant's activities' in the forum state; *and* (3) the defendant's acts or the consequences caused by the defendant 'must have a substantial enough connection with the forum state to make the exercise of jurisdiction over him reasonable.'" *LeafFilter N., LLC v. Home Craft Builders, Inc.*, 487 F. Supp. 3d 643, 647-48 (N.D. Ohio 2020) (quoting *Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968) (emphasis in original)). The first prong is satisfied if the defendant has sufficient contacts with the forum state.  *Id.* at 646 (citing *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 887 (6th Cir. 2002)).  Here, the FAC establishes that: (1) Ledge Lounger has sufficient contacts in Ohio; (2) Step2's claims arise from those contacts; and (3) based on the first two prongs, exercise of personal jurisdiction is reasonable.

---

[3] Contrary to Ledge Lounger's argument (MTD at 3), the regular business Ledge Lounger conducts in Ohio need not be related to its enforcement activities to satisfy Section A(4).  *Imperial Products, Inc. v. Endura Products, Inc.*, 109 F. Supp. 2d 809, 814-15 (S.D. Ohio 2000).

### 1. *Ledge Lounger has sufficient contacts in Ohio*

Despite Ledge Lounger's contention to the contrary (MTD at 8), the FAC alleges **numerous** contacts Ledge Lounger has with Ohio.  For instance, Ledge Lounger: (i) sent a cease and desist letter to Step2 in Ohio to prevent Step2 from making sales to customers in Ohio; (ii) systematically and repeatedly directed infringement reports, through Amazon, at Step2 in Ohio; (iii) continuously contacted and did business with its at least five dealers in Ohio; (iv) sold to customers located in Ohio through its website; (v) sold to customers located in Ohio through its Amazon storefront; and (vi) enforced the '905 Registration against other competitors to prevent those competitors from making sales to customers in Ohio.

First, Ledge Lounger asks the Court to ignore the *SnapPower* case because it applies Federal Circuit law to a patent issue, and instead asks the Court to rely on the *Avocent* case that **also** applies Federal Circuit law to a patent issue (as the Court did in the *J.M. Smucker* case). (MTD at 5-6.)  Ledge Lounger relies on *J.M. Smucker* for the proposition: "Sending cease and desist letters relating to trade dress infringement is insufficient to establish personal jurisdiction for declaratory judgment claims." (*Id.*) While *J.M. Smucker* involved declaratory judgment of **trademark** noninfringement, the Court borrowed from the Federal Circuit's *Avocent* case, which dealt with declaratory judgment of **patent** noninfringement, and applied it in a trademark context. *J.M. Smucker Co. v. Hormel Food Corp.*, 526 F. Supp. 3d 294, 657 (N.D. Ohio 2021) (citing *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1332-34 (Fed. Cir. 2009)).  So too, then, this Court can borrow from the Federal Circuit's *SnapPower* case, which dealt with declaratory judgment of noninfringement of a **patent**, and apply it here in the **trade dress** context.

Moreover, the facts here more closely align with *SnapPower* than *J.M. Smucker*.  In *J.M. Smucker*, the **only** contact that the defendant had with Ohio was sending a cease and desist letter, and there was **no evidence** that the defendant engaged in other activities relating to the enforcement

of its alleged trademark in Ohio, such as the initiation of extra-judicial enforcement actions within Ohio.  526 F.Supp.3d at 658.  Here, however, as in *SnapPower*, **in addition to** the cease and desist letter, Ledge Lounger **also** engaged in other enforcement activities relating to its alleged trade dress in Ohio—i.e., the initiation of extra-judicial enforcement actions by Ledge Lounger purposefully and repeatedly **directing** infringement reports, through Amazon, **at** Step2 in Ohio. Ledge Lounger's express aim was the removal of Step2's Amazon.com listings, which would necessarily (and intended to) affect sales, marketing, and other activities in Ohio.  Such repeated extra-judicial enforcement actions directed at Step2 in Ohio are sufficient contacts to establish personal jurisdiction.  *SnapPower v. Lighting Def. Grp.*, 100 F.4th 1371, 1377-78 (Fed. Cir. 2024) (holding extra-judicial enforcement activities through Amazon subjected defendant to personal jurisdiction in plaintiff's state for declaratory judgment claim).

Second, Step2 alleges that "Ledge Lounger regularly does and solicits business" in Ohio (FAC, ¶ 8) and that "Ledge Lounger sells its Signature Chaise in-pool chaise lounge in Ohio" (*id.*, ¶ 86).  The FAC continues, even providing a specific example: "on Defendant Ledge Lounger's website, Defendant Ledge Lounger identifies 'Shawnee Pools' in Lima, Ohio, as part of Defendant Ledge Lounger's 'Worldwide Dealer Network.'"  (*Id.*)  In fact, as evidenced on Ledge Lounger's website, which was cited in the FAC ([https://ledgeloungers.com/pages/showrooms](https://ledgeloungers.com/pages/showrooms)), Ledge Lounger sells chaise lounges—including the chaise lounges that are allegedly covered by the '905 Registration—through dealers in at least **five different Ohio locations** (Cleveland, Toledo, Lima, Franklin, and West Chester):



(*See* Ex. 1.)[4]  Thus, the FAC contains sufficient allegations for the Court to conclude Ledge Lounger is continuously contacting and doing business with its Ohio dealers, establishing minimum contacts.  And, tellingly, ***nowhere*** in its motion does Ledge Lounger deny these critical allegations.

Separately, but relatedly, Ledge Lounger all but ignores the allegations of Ledge Lounger's online activities (i.e., selling to Ohio customers through its website and Amazon storefront).  (FAC, ¶ 86.)  The Sixth Circuit follows "the *Zippo* 'sliding scale' framework to determine when a defendant's online activities constitute purposeful availment."  *NOCO Co. v. Shenzhen Valuelink E-Com. Co.*, 550 F. Supp. 3d 488, 495 (N.D. Ohio 2021) (quoting *Neogen*, 282 F.3d at 890 (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997))).

"On this scale, a finding of purposeful availment is proper if the website manifests 'a

---

[4] Left-clicking on the red location markers reveals the name, address, phone number, and website for each dealer.

7

conscious choice to transact business with inhabitants of a forum state.'" *Id.* at 496 (quoting *Neogen,* 282 F.3d at 890). And personal jurisdiction is especially proper for "highly sophisticated sellers with an extensive offering of merchandise and a volume of business that requires a warehouse" *Id.* (quoting *Dedvukaj v. Maloney*, 447 F. Supp. 2d 813, 822 (E.D. Mich. 2006)). Thus, "[w]here [an online platform] is used as a means for establishing regular business with a remote forum . . . then a defendant's use of [the platform] may be properly taken into account for purposes of establishing personal jurisdiction." *Id.* (citation omitted).

Here, Ledge Lounger's website is interactive in a way to allow Ohio residents to locate dealers and showrooms nearest to them in Ohio, manifesting a conscious choice to transact business with Ohio residents.  The interactive dealer network map includes links to directions to Ledge Lounger's Ohio dealers; indeed, such links could only be directed at Ohio residents.  *See id.* at 497 (citing *Dedvukaj*, 447 F. Supp. 2d at 820) ("Sellers cannot expect to avail themselves of the benefits of the internet-created world market that they purposefully exploit and profit from without accepting the concomitant legal responsibilities that such an expanded market may bring with it.").

Moreover, like the defendant in *NOCO*, Ledge Lounger is unquestionably a sophisticated business enterprise, selling its products through its ***worldwide*** dealer network and selling ***hundreds*** of various designs and products on its own online storefront and through e-commerce websites like Amazon.  *See id.*  And, as described above, Step2 alleges—and Ledge Lounger does not deny—that Ledge Lounger regularly does business in Ohio.  Thus, accepting these allegations as true and without the benefit of jurisdictional discovery, Step2 sufficiently alleges that Ledge Lounger has more than enough contacts in Ohio to establish personal jurisdiction.

### 2.    *Step2's claims arise from Ledge Lounger's contacts in Ohio*

Whether Step2's claims "arise from" Ledge Lounger's contacts in Ohio is evaluated under a "lenient standard." *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002).  Under this lenient

standard, Step2's claims "arise from" Ledge Lounger's contacts in Ohio because the claims "are at least marginally related to those contacts."  *NOCO*, 550 F. Supp. 3d at 498 (citation omitted).

First, Step2's claims for declaratory judgement claims arise from Ledge Lounger's contacts in Ohio because, in addition to the cease and desist letter Ledge Lounge sent to Step2 in Ohio, Ledge Lounger ***also*** engaged in other activities relating to the enforcement of its alleged trade dress in Ohio—i.e., the initiation of extra-judicial enforcement actions within Ohio by Ledge Lounger purposefully and repeatedly ***targeting Step2 in Ohio*** with its infringement reports through Amazon.  *SnapPower*, 100 F.4th at 1377 (finding plaintiff's claim for declaratory judgment of noninfringement arose out of defendant's activities with the forum because defendant's extra-judicial enforcement activities through Amazon were ***directed towards plaintiff in the forum***).

Moreover, Step2's claims for fraudulent trademark registration and attempted monopolization are intertwined with its declaratory judgment claims (i.e., Ledge Lounger's enforcement of the fraudulently obtained '905 Registration with the improper purpose of obtaining a monopoly and driving its competitors out of the market).  Thus, these two claims are at least marginally related to the same contacts discussed above with respect to the declaratory judgment claims.  Ledge Lounger's other contacts in Ohio—enforcing the fraudulently obtained '905 Registration against other competitors to prevent those competitors from making sales to customers in Ohio; continuously contacting and doing business with its at least five Ohio dealers; and selling to customers located in Ohio through its website and Amazon storefront—are also at least marginally related to the fraudulent trademark registration and attempted monopolization claims because they involve Ledge Lounger's enforcement of the '905 Registration with the improper purpose of obtaining a monopoly and driving its competitors out of the market.

Finally, with respect to Step2's claims against Ledge Lounger for tortious interference and

defamation, the FAC also includes sufficient allegations for these claims to be at least marginally related to Ledge Lounger's contacts in Ohio.  Step2's tortious interference and defamation claims are premised on the multiple, false infringement reports Ledge Lounger sent to Amazon and the resulting effect of Ledge Lounger's intentional interference with Step2's relationship with Amazon, Amazon's customers, and Step2's potential customers.  (FAC, ¶¶ 110-18.)  Of Ledge Lounger's numerous contacts with Ohio, important here is Ledge Lounger's selling to customers located in Ohio through its website and Amazon storefront.  (FAC, ¶ 86.)  These contacts are at least marginally related to Step2's tortious interference and defamation claims, satisfying the second prong.  *See NOCO*, 550 F. Supp. 3d at 498 (finding plaintiff's claims of tortious interference and trade libel were "at least marginally related" to defendant's Ohio contacts that stemmed from the Amazon Marketplace, which was "all that is required to satisfy this prong of the due process test").

### 3.    *Exercising personal jurisdiction over Ledge Lounger is reasonable*

"When the first two prongs of the due process test are met, as they are here, '[a]n inference arises that the third factor is satisfied.'"  *NOCO*, 550 F. Supp. 3d at 498 (citation omitted).  To overcome this inference, it is Ledge Lounger's burden to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1168 (6th Cir. 1988) (citation omitted).  Ledge Lounger is **silent** regarding reasonableness, failing to meet its burden.  Thus, because exercising personal jurisdiction over Ledge Lounger is justified under the Sixth Circuit's three-part due process test and authorized under Ohio's long-arm statute, the Court should deny the motion to dismiss.

### B.    **Alternatively, Jurisdictional Discovery Is Warranted**

"[D]eciding whether to permit jurisdictional discovery is discretionary."  *Olwin Metal Fabrication, LLC v. MultiCam, Inc.*, 631 F. Supp. 3d 485, 488 (S.D. Ohio 2022) (citing  *KNC Invs., LLC v. Lane's End Stallions, Inc.*, 579 F. App'x 381, 385 (6th Cir. 2014)).  A plaintiff seeking

jurisdictional discovery must "give the district court a reasonable basis to expect that discovery would reveal evidence that supports the claimed jurisdiction." *C.H. By and Through Shields v. United States*, 818 F. App'x 481, 484 (6th Cir. 2020).

As Step2 explained above, each of Ledge Lounger's Ohio contacts alleged in the FAC support personal jurisdiction for every cause of action.  Although such allegations must be accepted as true and viewed in Step2's favor, at least the following discovery would reveal evidence that would further support personal jurisdiction: (1) cease and desist letters related to the '905 Registration Ledge Lounger sent to companies other than Step2 that are located in Ohio; (2) each Amazon infringement report Ledge Lounger submitted against Step2 related to the '905 Registration; (3) the business relationship between Ledge Lounger and its dealers in Ohio; and (4) sales of products that Ledge Lounger claims are covered under the '905 Registration, including sales sold to its dealers and to customers through its website and Amazon storefront.

And, as also mentioned above, ***nowhere*** in the motion does Ledge Lounger deny Step2's allegations that Ledge Lounger regularly does and solicits business in Ohio, including with its Ohio dealers and with Ohio customers through its website and Amazon storefront.  If false, Ledge Lounger could have denied these allegations by including any affidavit, declaration, or other sworn statement in support.  *NOCO Co. v. Shenzhen Valuelink E-Com. Co.*, No. 1:20 CV 49, 2020 WL 11626078, at *1 (N.D. Ohio Apr. 1, 2020) (granting jurisdictional discovery limited to issues raised in or relevant to motion to dismiss for lack of personal jurisdiction where defendant filed its motion without including any affidavit, declaration, or other sworn statement in support).  Thus, because there is a reasonable basis to expect that discovery would reveal evidence that supports jurisdiction, the Court should grant Step's request to serve written discovery requests on Ledge Lounger seeking information and documents related to these limited topics.

11

### C.      The FAC Plausibly States Claims Against Ledge Lounger

"A motion to dismiss under Rule 12(b)(6) should not be granted 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Yoga Six Franchise, LLC v. Core 6 Energy Yoga LLC*, No. 1:19-CV-02796, 2020 WL 13890223, at *1 (N.D. Ohio Sept. 30, 2020) (Ruiz, J.) (quoting *Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004)).  "When reviewing a motion to dismiss, a court should 'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff.'" *Id.* (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)).  "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Id.* at *2 (quoting *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin College*, 259 F.3d 493 (6th Cir. 2001))).

Here, Ledge Lounger's motion to dismiss under Fed. R. Civ. P. 12(b)(6) should be denied because the FAC contains sufficient factual allegations that—when accepted as true and viewed in the light most favorable to Step2—plausibly state claims for: (1) tortious interference; (2) defamation; (3) fraudulent trademark registration; and (4) attempted monopolization.

#### 1.      *The FAC states a claim for tortious interference*

"Under Ohio law, the elements of tortious interference with a business relationship are: (1) a business relationship; (2) the tortfeasor's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom." *Molnarova v. Swamp Witches Inc.*, No. 2:23-CV-2157, 2024 WL 4198149, at *11 (S.D. Ohio Sept. 16, 2024) (citation omitted).  "Thus, the tort of interference with a business relationship generally occurs when a person, without a privilege to do so, induces or otherwise purposely causes a third

12

person not to enter into or continue a business relation with another." *Id.* (citation omitted).  Ledge Lounger's complaints are with respect to the third element (i.e., proximate cause and breach).

Ledge Lounger mischaracterizes the holding in the Sixth Circuit *NOCO* case related to proximate cause, stating that, as a matter of law, Ledge Lounger's submission of Amazon infringement reports cannot proximately cause Step2's injury because Amazon is an intervening cause.  (MTD at 10.)  To the contrary, *NOCO* held that the plaintiff did not prove proximate cause because the defendant submitted evidence of ***three*** intervening causes—a third party's submission of an Amazon infringement report, Amazon's ***independent*** investigation, and the plaintiff's own response to Amazon—that broke the causal chain ***and*** the plaintiff did not submit any evidence to the contrary; thus, ***no issue of material fact existed for the issue to be submitted to the jury*** and summary judgment was appropriate.  *NOCO Co. v. OJ Com., LLC*, 35 F.4th 475, 481-82, 485-87, fn. 3 (6th Cir. 2022).

Moreover, as the FAC affirmatively alleges, "each time Defendant Ledge Lounger submitted an infringement report to Amazon regarding Step2's Vero Pool Lounger, ***Amazon automatically removed the listing from Amazon without conducting any independent investigation*** of alleged infringement and validity, only relisting the product after Step2 appealed the removal."  (FAC ¶ 80; *see also* ¶¶ 66, 81.)  Although Step2 will eventually have to prove proximate cause, Step2 is not required to prove its case at the pleading stage and "under Ohio law proximate cause is not a question of law but a factual issue for the jury to determine."  *Utzinger v. United States*, 432 F.2d 485, 489 (6th Cir. 1970) (citation omitted).  Instead, Step2 satisfies the pleading requirements by alleging that Ledge Lounger submitted infringement reports to Amazon causing Step2's Vero Pool Lounger to be taken down and preventing sales of the Vero Pool Lounger.  (FAC, ¶¶ 83-84, 111-14.)

Moreover, Ledge Lounger's argument regarding breach misses the mark.  Step2 alleges Ledge Lounger's submission of the Amazon infringement reports interfered with Step2's existing relationship with Amazon and with Step2's prospective relationships with Amazon's customers and Step2's potential customers.  *See BCG Masonic Cleveland, LLC v. Live Nation Ent., Inc.*, 570 F. Supp. 3d 552, 557 (N.D. Ohio 2021) (Interference can be with any business relationship, even "prospective contractual relations, not yet reduced to a contract.") (citation omitted).  Ledge Lounger incorrectly asserts that Step2 does not allege "any" breach or termination of a relationship—ignoring Step2's allegations that Step2's business relationship with Amazon was to sell the Vero Pool Lounger, which was interfered with each time Ledge Lounger submitted an Amazon infringement report.  Step2 also alleges that when the Vero Pool Lounger was removed each time Ledge Lounger submitted a report, Step2's prospective business relationships with Amazon's customers and Step2's potential customers (i.e., sales of the Vero Pool Lounger) were interfered with.  Thus, Step2 has sufficiently stated a claim for tortious interference.

### 2.	The FAC states a claim for defamation

To overcome Ledge Lounger's motion to dismiss, the FAC must contain sufficient factual allegations that: (1) Ledge Lounger made a false statement of fact; (2) the statement was defamatory; (3) the statement was published; (4) Step2 was injured as a proximate result of the statement; and (5) Ledge Lounger acted with the requisite degree of fault in making the statement. *See Anthony List v. Driehaus*, 779 F.3d 628, 632-33 (6th Cir. 2015) (citation omitted). Ledge Lounger disputes only the first and third elements (i.e., falsity and proximate cause).

First, Ledge Lounger again and inappropriately asks the Court to decide the merits of the claim rather than the sufficiency of Step2's ***pleading*** of the claim.  (MTD at 12-13.)  At the pleading stage, the issue is not whether Step2 has proven that Ledge Lounger has made a statement of fact that is false; rather, the issue is whether Step2 alleges enough facts, making falsity ***plausible***.

14

*O'Malley v. NaphCare, Inc.*, 101 F. Supp. 3d 742, 752 (S.D. Ohio 2014) (denying motion to dismiss defamation claim where facts alleged supported the plausible assertion that the statement was false).

And, here, the factual allegations in the FAC make it plausible that the infringement reports Ledge Lounger purposefully and repeatedly submitted to Amazon contained false statements. Specifically, Step2 alleges that, in the Amazon infringement reports, Ledge Lounger made the following false statements about Step2's Vero Pool Lounger listing: (1) it infringes the '905 Registration; (2) it creates a "misleading impression of affiliation" with Ledge Lounger; (3) it creates a "link" with Ledge Lounger; (4) it "creates a risk of consumer confusion;" and (5) includes "false or misleading representations of fact."  (FAC, ¶ 72.)  Step2 also ***repeatedly alleges*** facts supporting the plausible assertion that those statements are ***false*** because the '905 Registration is invalid and unenforceable (*id.*, ¶¶ 32-55, 59, 67-68, 73, 93-100, 104 (alleging the '905 Registration is functional, aesthetically functional, not distinctive, generic, and was obtained through fraud)) and because Step2 does not infringe the '905 Registration (*id.*, ¶¶ 107-08 (alleging Step2's Vero Pool Lounger is not likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval with respect to Step2, Ledge Lounger, or its goods)).

Moreover, for the same reasons discussed above with respect to Step2's tortious interference claim, Ledge Lounger's reliance on the Sixth Circuit *NOCO* case is misplaced (MTD at 13), and proximate cause is not an appropriate issue to decide at the pleading stage based on the facts alleged here.  *See Utzinger*, 432 F.2d at 489.

Finally, the litigation privilege does not apply to false statements made to the ***private entity***, Amazon.  *See Bose v. Bea*, 947 F.3d 983, 996 (6th Cir. 2020).  And such privilege extends only to statements made in either "***judicial***" or "***quasi-judicial***" proceedings.  *Hensley v. Wester Chester*

15

*Twp.*, No. 1:21CV373, 2022 WL 4621432, at *7 (S.D. Ohio Sept. 30, 2022) ("[U]nder Ohio law, the Court notes that this litigation privilege only extends to statements made during judicial proceedings or quasi-judicial proceedings."); *Baldwin v. adidas Am., Inc.*, No. C2-02-265, 2002 WL 2012562, at *3 (S.D. Ohio July 29, 2002) (proceeding before the United States Patent and Trademark Office's Trademark Trial and Appeals Board is "quasi-judicial"); *Accord Newman v. Univ. of Dayton*, 172 N.E.3d 1122, 1135-36 (Ohio Ct. App. 2021) (proceeding before the Ohio Civil Rights Commission is "quasi-judicial").  The Sixth Circuit has warned that courts should not be generous in deciding what proceedings fit into the definitions of "judicial" or "quasi-judicial" when deciding whether the litigation privilege applies.  *See Bose*, 947 F.3d at 996 ("Thus, 'liberal application' means only that courts should liberally apply the absolute privilege when a statement is connected to a judicial or quasi-judicial proceeding, not that courts should be generous in deciding what proceedings fit that definition.").

Here, the false statements in Ledge Lounger's infringement reports were repeatedly made to take down Step2's Vero Pool Lounger from Amazon and to prevent sales.  These statements are not considered "quasi-legal," as Ledge Lounger incorrectly argues.  (MTD at 13.)  Rather, they are ***extra-judicial***, i.e., outside of and without authorization from the judicial system.  *See SnapPower*, 100 F.4th at 1377-78 (finding Amazon reports to be extra-judicial enforcement activities).  Thus, the litigation privilege does not apply.

### 3. The FAC states a claim for fraudulent trademark registration

"15 U.S.C. § 1120 imposes civil liability for the fraudulent registration of a trademark." *Brenton Prod. Enterprises, Inc. v. Motion Media*, 125 F.3d 855 (6th Cir. 1997).  To overcome Ledge Lounger's motion to dismiss, the FAC must contain sufficient factual allegations that Ledge Lounger: (i) made a false representation of a material fact; (ii) had knowledge of its falsity; (iii) had the intent to induce reliance on the misrepresentation; and (iv) damages.  *See id.*; *see also*

*Oatly AB v. D's Nats. LLC*, No. 1:17-CV-840, 2018 WL 3496386, at *5 (S.D. Ohio July 20, 2018), *report and recommendation adopted*, No. 1:17CV840, 2018 WL 4625553 (S.D. Ohio Sept. 27, 2018) ("Unlike a motion for summary judgment, a motion to dismiss is directed to the sufficiency of the pleadings, with the Court's review to be limited accordingly.").

In the FAC, Step2 alleges that Ledge Lounger made two false representations to the USPTO in securing the '905 Registration: (i) "Neither the applied-for-mark, nor any features thereof, is or has been the subject matter of a design or utility patent or patent application, including expired patents and abandoned patent applications" (the "Patent Statement") (FAC, ¶¶ 38-40; FAC Ex. 3, ¶ 29); and (ii) "The design at issue was developed separate from the function of lounge and outdoor furniture" (the "Development Statement") (FAC, ¶¶ 47-48; FAC Ex. 3, ¶ 35).

First, with respect to the Patent Statement, whether this statement was ***false***—as Step2 adequately alleges (FAC, ¶¶ 36-46)—***or true***—as Ledge Lounger attempts to argue in its motion (MTD at 14-15)—is not an appropriate issue to be decided at the motion to dismiss stage.  *See Oatly*, 2018 WL 3496386, at *5.  Likewise, for the Development Statement, Ledge Lounger asks the Court to decide the meritoriousness of Step2's claim rather than the sufficiency of Step2's pleading of the claim.  (MTD at 15.)  Again, at the motion to dismiss stage, the Court does not determine whether the allegations as pleaded constitute sufficient evidence to support or prove whether the Development Statement is false.  *See Oatly*, 2018 WL 3496386, at *5.  The issue is whether the FAC pleads adequate factual allegations for the Court to plausibly conclude that the Development Statement is false.  *Id.*  And the FAC does exactly that.  (*Compare* FAC Ex. 3, ¶ 35, the Development Statement (i.e., the Signature Chaise design was ***developed separate from the function of lounge and outdoor furniture***) *with* FAC, ¶¶ 49-55, the multiple statements Anderson made on behalf of Ledge Lounger to the contrary (i.e., touting the functionality of the Signature

Chaise design and how ***functional considerations drove development of the design***).)

Moreover, Step2 does not "simply label [the Patent Statement and the Development Statement] as 'material'" as Ledge Lounger would have the Court believe.  (MTD at 16.)  Instead, Step2 specifically alleges that the '905 Registration would not have issued but for Ledge Lounger's misrepresentations.  (FAC, ¶ 100 ("[T]he Patent Statement and the Development Statement . . . were material to the examining attorney's decision to approve the registration for publication, at least because they directly addressed the functionality concerns that had initially led to the rejection of the application and ***misled the examining attorney into believing that the trade dress was non-functional and eligible for registration***.") (emphasis added); *see also id.*, ¶¶ 36-59.)

Ledge Lounger addresses the second and third elements (knowledge and intent) together, both of which are adequately pleaded in the FAC.  Once again, Ledge Lounger relies on cases (*Therasense* and *In re Bose*) that did not apply the standard for motions to dismiss.  *See Oatly*, 2018 WL 3496386, at *5 ("While *In re Bose Corp.* might be relevant after the record is developed, it ***provides no support*** for [plaintiff's] argument that [defendant's] counterclaim [of fraudulent trademark registration] should be dismissed ***at the pleading stage***.") (emphasis added); *see also In re Bose Corp.*, 580 F.3d 1240 (Fed. Cir. 2009); *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1282, 1290-91 (Fed. Cir. 2011) (reviewing district court's finding of inequitable conduct in a patent case ***following a bench trial***).  Here, Step2 pleads facts sufficient to plausibly infer that Ledge Lounger knew the Patent Statement and Development Statement were false and intended to deceive the USPTO.  For example, Ledge Lounger's Anderson was a named inventor on the '975 Patent, making both Ledge Lounger and Anderson aware that the Patent Statement was false.  (FAC, ¶¶ 38-40.)  And Ledge Lounger's Anderson made multiple statements ***touting*** the functionality of the Signature Chaise design and how functional considerations drove development

18

of the design, which directly contradicts the Development Statement, making both Ledge Lounger and Anderson aware that the Development Statement was false.  (FAC, ¶¶ 47-49.)

Finally, Step2 adequately alleges it was injured by the fraudulent registration.  (FAC, ¶ 84 ("As a result of Defendant Ledge Lounger's false statements and related misconduct, Step2 has *already lost significant sales* of the Vero Pool Lounger, and, unless the Court enjoins Defendant Ledge Lounger, Step2 *will suffer millions of dollars in additional damages* as well as serious and *irreparable harm, including to the reputation and goodwill* that Step2 has spent years and significant resources building with its customers.") (emphasis added).)  Because Step2's injury includes lost sales and damage to reputation, damages are sufficiently pleaded.  *See Oatly*, 2018 WL 3496386, at *5 (finding damages sufficiently pled where the complaint alleged lost sales); *Durnell's RV Sales, Inc. v. Jeff Couch's Campers, LLC*, No. 1:22-CV-242, 2023 WL 1070235, at *6 (S.D. Ohio Jan. 27, 2023) ("Damages can encompass diminished sales from lost product markets, increased expenses to work around the fraudulently registered mark, or quantifiable reputational harm incurred from the defendant's fraudulent registration.") (citations omitted).).

### 4.     *The FAC states a claim for attempted monopolization*

To survive dismissal of the attempted monopolization claim, Step2 need only allege facts that plausibly show: "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power."  *Spectrum Sports, Inc v. McQuillan*, 506 U.S. 447, 456 (1993).

In the motion, Ledge Lounger only challenges the third element of this claim, but to no avail.  The Sixth Circuit has defined monopoly power as the ability "to raise prices or to exclude competition when it is desired to do so."  *Spirit Airlines, Inc. v. Northwest Airlines, Inc.*, 431 F.3d 917, 935 (6th Cir. 2005) (citations omitted).  The existence of this power "ordinarily is inferred from the seller's possession of a predominant share of the market."  *Eastman Kodak Co. v. Image*

*Tech. Servs.*, Inc., 504 U.S. 451, 464 (1992).  "At the motion to dismiss stage, with discovery still to be completed, the plaintiff does not have to allege an exact, percentage-based market share." *Scooter Store, Inc. v. SpinLife.com, LLC*, 777 F. Supp. 2d 1102, 1117 (S.D. Ohio 2011) (citing *Todd v. Exxon Corp.*, 275 F.3d 191, 203 (2d Cir. 2001) ("At this stage, it is sufficient that plaintiff has alleged specific facts that support a narrow product market in a way that is plausible and bears a rational relation to the methodology courts prescribe to define a market for antitrust purposes.")).

Here, Step2 adequately pleads facts that Ledge Lounger has a dangerous probability of achieving monopoly power, first by identifying the specific product market (in-pool chaise loungers, including Step2's Vero Pool Lounger) and geographic market (in the United States, including Ohio).  Step2 further alleges that: (i) Ledge Lounger is engaging in conduct that is specifically designed to drive others from the relevant market and exclude competitors; (ii) Ledge Lounger is abusing the trademark system and attempting to enforce a functional design and obtained the '905 Registration through fraud; and (iii) Ledge Lounger is suing competitors to enforce the fraudulently obtained '905 Registration.  And, from these allegations, the Court can infer that if Ledge Lounger is successful, it would have the power to drive its competitors from the marketplace entirely or significantly reduce their market share, thereby giving Ledge Lounger the predominant market share on which an inference of market power could be based.  Thus, these facts are sufficient to plausibly allege that Ledge Lounger has a dangerous probability of achieving monopoly power.  *See Scooter Store*, 777 F. Supp. 2d at 1117-18 (denying motion to dismiss an attempted monopolization claim).

## V.    CONCLUSION

For all the foregoing reasons, the Court should deny Ledge Lounger's motion to dismiss under Fed. R. Civ. P. 12(b)(2) and 12(b)(6).  Alternatively, Step2 should be allowed to seek jurisdictional discovery from Ledge Lounger.

Dated:  September 25, 2024   Respectfully submitted,


         *s/ John F. Bennett*

         John F. Bennett (0074506)
         Paul J. Linden (0083699)
         Ava M. Bowden (0100384)
         FROST BROWN TODD LLP
         301 East Fourth Street, Suite 3300
         Cincinnati, OH 45202
         513-651-6423
         jbennett@fbtlaw.com
         plinden@fbtlaw.com
         abowden@fbtlaw.com

         Attorneys for Plaintiff
         THE STEP2 COMPANY, LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 25th day of September, 2024, I caused the foregoing to be electronically filed with the clerk of courts using the CM/ECF system, which will send a notice of electronic filing to all counsel of record registered with the CM/ECF system.

*s/ John F. Bennett*
John F. Bennett (0074506)
Counsel for Plaintiff
