UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| The Step2 Company, LLC<br><br>               Plaintiff,<br><br>   v.<br><br>Ledge Lounger, Inc. and<br>Christopher Anderson<br><br>               Defendants. | Case No. 5:24-cv-807<br><br>Jury Trial Demanded<br><br>Judge David A. Ruiz |

**CHRISTOPHER ANDERSON'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM**

i

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................1
II. ARGUMENT .........................................................................................................2
    A. The FAC Failed to Plead a *Prima Facie* Case for Jurisdiction Over Anderson ..................................................................................................................2
        1. Anderson Did Not Argue that the Fiduciary Shield Doctrine Applies .2
        2. Step2 Must Establish Anderson Purposefully Availed Himself of Ohio ..................................................................................................................2
            a. The FAC Failed to Allege Contacts by Anderson with *Ohio*.....3
            b. Alleged Injury in Ohio is not Purposeful Contact By Anderson with Ohio................................................................................................4
    B. The FAC Failed to State a Plausible Claim Under 15 U.S.C. § 1120 ...............5
        1. Anderson Did "Not Procure" the Trademark Registration..................6
        2. Step2 Failed to Plead that the Anderson Declaration Statements are Plausibly False ........................................................................................7
        3. Step2 Failed to Plausibly Plead "But For" Materiality........................8
        4. Step2 Fails to Allege that Anderson Knowingly Made a False Representation With Intent to Deceive the PTO..................................9
        5. Step2 Failed to Plead Consequential Damages from the Registration10
III. CONCLUSION....................................................................................................10

# **TABLE OF AUTHORITIES**

**Cases**

*Balance Dynamics Corp. v. Schmitt Indus. Inc.,*
   204 F.3d 683 (6th Cir. 2000) ...................................................................................................2

*Cadle, Co. v. Schlichtmann,*
   123 F. App'x 675 (6th Cir. 2005) ............................................................................................5

*Champion Food Serv. LLC v. Vista Food Exchange,*
   2013 WL 4046410 (N.D. Ohio, Aug. 7, 2013) ........................................................................3

*Commodigy, OG Vegas LLC v. ADM Labs.,*
   417 F.Supp.3d 912 (N.D. Ohio 2019) .....................................................................................2

*Etekcity Corp. v. Devine LEDS Ltd.,*
   No. 19-cv-1246, 2019 WL 7945607 (C.D. Cal. Oct. 30, 2019) ...............................................4

*Gaudreau v. Am. Promotional Events, Inc.,*
   511 F.Supp.2d 152 (D.D.C. 2007) ..........................................................................................6

*Gilbert/Robinson, Inc. v. Carrie Beverage-Mo., Inc.,*
   989 F.2d 985 (8th Cir. 1993) .................................................................................................10

*Inwood Labs., Inc. v. Ives Labs., Inc.,*
   456 U.S. 844 (1982) ................................................................................................................8

*Joyner v. MERS,*
   451 F.App'x 505 (6th Cir. 2011) .............................................................................................2

*Magna Int'l, Inc. v. Deco Plas, Inc.,*
   2010 WL 2044873 (N.D. Ohio May 10, 2010) .......................................................................9

*Northwestern Corp. v. Gabriel Mfg. Co., Inc.,*
   No. 95 C 2004, 1996 WL 251433 (N.D. Ill. May 8, 1996) .....................................................8

*Solo Cup Operating Corporation v. Lollicup USA, Inc.,*
   Case No. 16 C 8041, 2017 WL 3581182 (N.D. Ill. Aug. 8, 2017) ..........................................9

*TrafFix Devices, Inc. v. Marketing Displays, Inc.,*
   532 U.S. 23 (2001) ..................................................................................................................7

*Ushodaya Enterprises, Ltd. v. V.R.S. Int'l, Inc.,*
   63 F.Supp.2d 329 (S.D.N.Y. 1999) .........................................................................................6

*Walden v. Fiore,*
   571 U.S. 277 (2014) ............................................................................................................1, 5

**Statutes**

15 U.S.C. § 1120 ...................................................................................................................passim

Ohio Rev. Code §2307.382(6) .......................................................................................................1

I. **INTRODUCTION**

Christopher Anderson ("Anderson"), the former CEO of Ledge Lounger, should be dismissed from this lawsuit because (i) Anderson lacks sufficient minimum contacts with Ohio to exercise personal jurisdiction over him, and (ii) Step2 fails to set forth a plausible claim under 15 U.S.C. § 1120. None of the arguments Step2 raises justifies denying Anderson's motion to dismiss.

First, Step2 argues that the "fiduciary-shield doctrine" does not preclude personal jurisdiction over Anderson, but that argument is a red herring. Anderson's motion to dismiss did not argue that the "fiduciary-shield doctrine" applied. Rather, Anderson argued that the FAC did not allege *any* contact by Anderson with Ohio, let alone minimal contacts, sufficient to satisfy due process concerns. Mot. at 7-11.

Next, Step2 asserts that Anderson has "**numerous contacts** in Ohio," Opp. at 6, but that assertion is belied by its opposition brief. Step2 does not dispute that (i) the declaration Anderson submitted was a contact with Washington D.C., and not Ohio, and (ii) that the take down notices Ledge Lounger sent to Amazon were a contact with the State of Washington, not Ohio. Furthermore, Step2's brief is inconsistent with Step2's pleading which alleged that jurisdiction is proper under the Ohio long-arm statute based on tortious injury in Ohio based on acts committed "*outside* this state." *See* FAC ¶ 8, citing Ohio Rev. Code §2307.382(6).

That leaves Step2's argument that the "intend[ed] effects" of Ledge Lounger's take down notices was to cause *harm* to Step2 in Ohio. *See* FAC § 82. But, as explained in Anderson's opening motion, Anderson did not send the take down notices. And, the mere injury to Step2 in Ohio is not a contact with Ohio and is insufficient to establish personal jurisdiction under binding precedent. Mot. at 7, 9-11 (citing e.g., *Walden v. Fiore*, 571 U.S. 277, 285 (2014) and Sixth Circuit precedent). Step2 does not even address *Walden* or the Sixth Circuit precedent Anderson cited in

its opening motion. For the reasons stated herein and in Anderson's motion, the Court should grant Anderson's motion to dismiss for lack of personal jurisdiction and failure to state a claim for relief.

## II. ARGUMENT

### A. The FAC Failed to Plead a *Prima Facie* Case for Jurisdiction Over Anderson

#### 1. Anderson Did Not Argue that the Fiduciary Shield Doctrine Applies

Step2's arguments regarding the fiduciary shield doctrine are misplaced, because Anderson's motion did not raise this issue. Step2 argues that personal jurisdiction over Anderson is appropriate because "Anderson was involved in the conduct underlying Step2's fraudulent trademark registration claim," Opp. at 5, but, even if true, that does not establish that the Court may exercise jurisdiction over Anderson.

#### 2. Step2 Must Establish Anderson Purposefully Availed Himself of Ohio

As with any defendant, the Court must determine whether Anderson's conduct falls within the state's long-arm statute and that the exercise of jurisdiction comports with constitutional due process. *Balance Dynamics Corp. v. Schmitt Indus. Inc.,* 204 F.3d 683, 698 (6th Cir. 2000). To assert personal jurisdiction over Anderson, he, as an "officer [of Ledge Lounger] must have purposefully availed himself of the forum." *Joyner v. MERS*, 451 F.App'x 505, 506 (6th Cir. 2011); *see also Balance Dynamics,* 204 F.3d at 698 ("[W]here an out-of-state agent is actively and personally involved in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice; i.e., whether she purposely availed herself of the forum and the reasonably foreseeable consequences of that availment.")

Anderson has not purposefully availed himself of Ohio. The cases Step2 cites are distinguishable because the individuals over which the court exercised personal jurisdiction had contacts in Ohio and the causes of action arose out of those contacts. In *Commodigy, OG Vegas LLC v. ADM Labs.*, 417 F.Supp.3d 912 (N.D. Ohio 2019), the defendant ADM directed activity

into Ohio by communicating with, and sending hemp samples to, the plaintiff in Ohio for the purpose of initiating a continuous business relationship. *Id.* at 917, 923. The individual named defendants participated in the negotiation of a sales agreement with the plaintiff and activities relating to obligations under the agreement. *Id.* at 923. Plaintiff's breach of contract and fraud claims against the individuals arose out of the agreement and related warranty obligations. *Id.* at 924.

In *Champion Food Serv. LLC v. Vista Food Exchange,* 2013 WL 4046410 (N.D. Ohio, Aug. 7, 2013), an individual defendant, Newman, submitted, on behalf of defendant Vista, a bid proposal to the Ohio Association of Foodbanks (OAF), listing Newman as Vista's division sales manager for Ohio. *Id.* at *1, *5. Newman travelled to Ohio in connection with the OAF program, *id.* at *5, and personally transacted business with Champion, an Ohio corporation. The bid proposal sent within Ohio allegedly utilized plaintiff's trade secrets and proprietary information. *Id.* at *1. Personal jurisdiction over Newman was appropriate because Newman purposefully availed himself of Ohio by activities within Ohio that gave rise to the tort claims, including trade secret misappropriation. *Id.* at *5-6.

### a. The FAC Failed to Allege Contacts by Anderson with *Ohio*

In contrast, Step2's allegations do not demonstrate that Anderson purposefully availed himself of Ohio. Step2 asserts that "Anderson has **numerous contacts** in Ohio,"[1] but that assertion finds little support in the FAC paragraphs cited in Step2's opposition brief. Opp. at 6 (citing ¶¶ 4,

---

[1] Step2 argues "for the same reasons explained in Step2's response to Ledge Lounger's motion to dismiss (Doc. 18, at 5-10)," Anderson also has contacts in Ohio. Opp. at 6. Ledge Lounger addressed why those alleged contacts were not contacts with Ohio or contacts that did not give rise to Step2's claims or defenses. ECF# 21, at 3-6. Step2's present brief fails to explain how its 15 U.S.C. § 1120 claim arises out of those alleged contacts by Ledge Lounger's (i) dealers in Ohio, (ii) operation of a website selling products to customers in Ohio, and (iii) selling products to customer through Amazon.

62, 63, and 70-85). Paragraph 4 alleges that Anderson is a resident of Texas and founder and former CEO of Ledge Lounger, but none of the allegations refer to activity in Ohio. FAC, ¶ 4. Indeed, Ohio is not even mentioned.

Step2 cites FAC, ¶¶ 62 and 63, Opp. at 5, but those allegations relate to Ledge Lounger's enforcement activities against *other companies* in the Southern District of *Texas*. Again, no mention is made of any activity in Ohio, let alone by Anderson.

Paragraphs ¶¶ 71-85 of the FAC relate generally to Ledge Lounger's take down notices sent to Amazon in the State of Washington. *See e.g.* FAC ¶ 72 ("Defendant Ledge Lounger began submitting infringement reports *to Amazon*") (emphasis added). Step2 does not dispute that Amazon notices were a contact with the state of Washington. *Etekcity Corp. v. Devine LEDS Ltd.*, No. 19-cv-1246, 2019 WL 7945607, *3 (C.D. Cal. Oct. 30, 2019) (granting motion to dismiss for lack of personal jurisdiction finding "Plaintiff sent the letter to Amazon, located in Seattle, Washington …. which would make the letter a contact with Washington."). Step2 also failed to address the numerous district court decisions, such as *Dadbod, Shenzen, English Tea,* and *Etekcity* holding that take down letters directed to out-of-forum website providers do not constitute purposeful acts directed to the forum sufficient to exercise personal jurisdiction. Mot. at 11.

Nor does Step2 dispute that Anderson's submission of a declaration to the PTO was a contact with Washington D.C., not Ohio. In short, Step2's 15 U.S.C. § 1120 claim is premised on *out-of-state* activities (the declaration and Amazon enforcement).

    b. **Alleged Injury in Ohio is not Purposeful Contact By Anderson with Ohio**

The only allegations Step2 cites mentioning Ohio are in ¶ 70 (Ledge Lounger's counsel sent a cease and desist letter to Step2 in Ohio) and ¶ 82 ("intending effects" of Amazon take down letters "would be felt in Ohio"). Paragraph 82 of the FAC does not even refer to Anderson, only Ledge Lounger.

Step2's 15 U.S.C. § 1120 claim does not "arise" from the cease and desist letter; indeed, Step2's brief does not mention it. Furthermore, Step2's alleged injury in Ohio is not a contact by Anderson with Ohio. As explained in Anderson's opening motion, Step2's alleged injury in the forum is not a contact with Ohio (by either Anderson or Ledge Lounger) sufficient to establish personal jurisdiction under the Supreme Court's *Walden* decision and Sixth Circuit precedential decisions. Mot. at 9-11.

Ledge Lounger's take down notices sent to Amazon did not complain about activities that were specifically directed to Ohio. Instead, the communication related to a product offered for sale on Amazon's website that was accessible anywhere in the world. *See e.g. Cadle, Co. v. Schlichtmann*, 123 F. App'x 675, 679 (6th Cir. 2005) (no personal jurisdiction over nonresident defendant where publication was about Ohio resident, but publication was not "specifically target[ed] or [wa]s even directed at Ohio readers, as opposed to residents of other states."). As in *Walden*, that Step2 was allegedly injured in Ohio was "not because anything independently occurred there, but because [Ohio] is where [Step2] chose to be." *Walden*, 571 U.S. at 290.

For the foregoing reasons and the reasons stated in his motion, Anderson lacks sufficient minimum contacts with Ohio to exercise personal jurisdiction over him. Anderson should therefore be dismissed from this lawsuit.

**B. The FAC Failed to State a Plausible Claim Under 15 U.S.C. § 1120**

Step2's 15 U.S.C. § 1120 claim against Anderson should also be dismissed because it fails to state a plausible claim for relief. In its opening memorandum, Anderson explained why Step2 failed to plead a plausible claim against him under 15 U.S.C. § 1120. Step2 raises a number of arguments attempting to salvage its deficient pleadings, but those arguments fail as discussed below.

### 1. Anderson Did "Not Procure" the Trademark Registration

Neither of Step2's arguments that Anderson may be personally liable under 15 U.S.C. § 1120 have merit. First, Step2 criticizes Anderson for citing *Gaudreau*, but *Gaudreau* is informative because it explains that Congress limited the scope of liability in 15 U.S.C. § 1120 suits, requiring that a trademark registration be "procured" (obtained, not merely applied for) prior to subjecting the trademark owner to liability. *Gaudreau v. Am. Promotional Events, Inc.,* 511 F.Supp.2d 152, 160 (D.D.C. 2007). And *Gaudreau* stated that the "*trademark owner*" is the "person" who procures a trademark registration. *Id.*

*Gaudrea* is consistent with the plain language of 15 U.S.C. § 1120 that identifies *who* may be liable under the statute: "Any person who shall procure registration." 15 U.S.C. § 1120. Congress did not state that any person who **submits** a declaration in the trademark registration process may be liable under 15 U.S.C. §1120. Rather, Congress limited liability to "***any person who shall procure registration.***" Anderson did not procure the trademark registration—Ledge Lounger, the trademark owner, did. Thus, Anderson cannot be personally liable under 15 U.S.C. § 1120.

Step2 cites a non-binding district court decision finding a corporate officer liable under § 1120. Opp. at 9, citing *Ushodaya Enterprises, Ltd. v. V.R.S. Int'l, Inc.*, 63 F.Supp.2d 329, 341-42 (S.D.N.Y. 1999). The *Ushodava* district court, however, did not discuss, let alone construe, the statutory language of 15 U.S.C. § 1120 and decide whether the officer "procured" the trademark registration. Accordingly, *Ushodava* did not address the statutory construction issue Anderson raises.

Step2 also cites *Champion Food,* Opp. at 8, but that reliance is misplaced because the court did not address a 15 U.S.C. § 1120 claim. Indeed, *Champion Food* addressed *Ohio* state law fraud claims, which is not relevant to the statutory construction issue here. 2013 WL 4046410, at *3

("*Ohio law* recognizes that corporate officer may be liable in their individual capacity for acts of fraud.") (emphasis added).

### 2. Step2 Failed to Plead that the Anderson Declaration Statements are Plausibly False

Step2's 15 U.S.C. § 1120 claim fails to plead a plausible claim for relief because it does not plead plausibly false statements. Contrary to Step2's arguments, Anderson is not asking the court to decide whether statements in Anderson's declaration are true or false. Opp. at 7-8. Rather, the Court must decide whether the statements, as plead, are *plausibly* false. Without any plausibly false statements by Anderson, there is no basis for Step2's 15 U.S.C. § 1120 claim. Neither statement Step2 identifies from the Anderson declaration is plausibly false.

Whether the Patent Statement that no features of "the applied-for-mark, nor any features thereof, has been the subject of a … utility patent" is false turns on the "subject" matter of the '975 Patent. Significantly, Step2 does not dispute that a patent's subject matter is defined by its *claims* and that the claims of the '975 Patent do *not* claim a feature of the registered trade dress. ECF # 17, at 15-16. This is important because patent *claims* drive the trade dress functionality analysis: "[a] utility patent is strong evidence that the features therein *claimed* are functional." *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29 (2001) (finding dual spring trade dress was functional because expired patent claimed a dual spring). Step2's 15 U.S.C. § 1120 claim, however, is devoid of any allegations regarding the *claims* of the '975 Patent. That "Anderson was an inventor on the '975 patent," Opp. at 10, says nothing about the subject matter of the patent. Step2 failed to plead that the Patent Statement was plausibly false.

As to the Development Statement the trade dress "was developed separate from the function of lounge and outdoor furniture," Opp. at 7, Step2 failed again to articulate why this statement is false. *Doughterty v. Esperion Therapeutics, Inc.*, 905 F.3d 971, 978 (6th Cir. 2018).

Instead, Step2's brief merely points to allegations in the counterclaim alleging the statement is "contrary" to statements made by Anderson. Opp. at 8, citing FAC , ¶¶ 49-55; *id.* at 10.

Significantly, Step2's brief, like its FAC, ignores that Anderson submitted his declaration in the context of applying for a trade dress registration where "functional" has a specific legal meaning. Under trade dress law, "a product feature is functional if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n. 10 (1982). Step2's pleading fails to allege facts explaining why Anderson's Development Statement is false under the applicable standard for trade dress functionality, especially in light of other statements in his declaration stating the applied for trade dress was not essential to the use of a lounge chair and actually increased costs. ECF # 13, Ex. 3, ¶¶ 30-34.

### 3. Step2 Failed to Plausibly Plead "But For" Materiality

Step2's brief also fails to address Anderson's arguments that Step2 failed to plausibly plead that the Anderson statements were "but for" material. ECF #17, at 16-17. Contrary to Step 2's opposition, its FAC simply labels the statements as material. *See* Opp. at 8. But more importantly, Step2's brief and FAC does not address "but for" materiality. Although Step2 alleges the statements are "material" because they relate to functionality, functionality is not a proper basis for a claim of fraud on the PTO. *Northwestern Corp. v. Gabriel Mfg. Co., Inc.*, 1996 WL 251433, *5 (N.D. Ill. May 8, 1996).

Step2 also does not explain how either declaration statement could be "but for" material when the examining attorney considered evidence of the alleged functionality of Ledge Lounger's trade dress, yet issued the registration. More specifically, a third party submitted a letter of protest with "evidence providing additional information to support that an element of the design is functional." ECF #17-4, Ex. D. The evidence included the '975 Patent and Ledge Lounger

publications regarding its Signature Chaise lounge chair. *Id.* The examining attorney reviewed all of this evidence, including the alleged functional aspects of Ledge Lounger's lounge chair, and issued the registration. The examiner was in a position to disagree with Anderson's Patent Statement and Development Statement on the issue of functionality, but did not. *See Solo Cup Operating Corporation v. Lollicup USA, Inc.*, 2017 WL 3581182, *3 (N.D. Ill. Aug. 8, 2017). Thus, Ledge Lounger's registration would have issued regardless of the alleged misrepresentations, meaning the declaration statements were not "but for" material.

### 4. Step2 Fails to Allege that Anderson Knowingly Made a False Representation With Intent to Deceive the PTO

Step2 failed to plead sufficient facts to plausibly show Anderson *knew* that the two alleged representations were false and *intended* to deceive the PTO. *Benton*, 125 F.3d 855, at *3. Indeed, Step2 ignores that Anderson signed his declaration under oath believing the statements were true. ECF # 13, Ex. 3, at 9; *Magna Int'l, Inc. v. Deco Plas, Inc.*, 2010 WL 2044873, at *10 (N.D. Ohio May 10, 2010). Again, Step2 ignores that the "subject" matter of a patent and whether a product feature is "functional" have specific legal meanings.

Step2's brief argues that "Anderson knew the Patent Statement" was false because "Anderson was a named inventor on the '975 Patent." Opp. at 10. That Anderson is a named inventor does not plausibly show that *he knew* the statement was false, especially when the "subject" of a patent is governed by its claims. Step2's brief alleges that Anderson knew the Development Statement was false because of statements regarding "how functional consideration drove development of the design." Opp. at 10. But, "functionality" has a specific meaning in the trade dress context, which Step2 again ignores.

### 5. Step2 Failed to Plead Consequential Damages from the Registration

Step2's 15 U.S.C. § 1120 claim also fails to state a plausible claim of damages resulting from the *registration* of Ledge Lounger's trademark at the time of the registration. As explained in Anderson's opening memorandum, Step2 alleges injury based on the *use* of the registration. FAC, ¶ 122. Anderson cited case law that a 15 U.S.C. § 1120 injury must arise from and at the time of the registration rather than from later use. ECF #16, at 18 citing e.g., *Gilbert/Robinson, Inc. v. Carrie Beverage-MO, Inc.*, 989 F.2d 985, 990 (8th Cir. 1993). Step2 does not address this argument or cite contrary authority.

### III. CONCLUSION

For the reasons set forth in Anderson's opening memorandum and herein, the Court should find that it lacks personal jurisdiction over Anderson and that the FAC fails to set forth a plausible claim for liability under 15 U.S.C. § 1120.

Dated: October 17, 2024              Respectfully submitted,

By: /s/ *Matthew P. Becker*
Drew H. Campbell (0047197)
dcampbell@brickergraydon.com
BRICKER GRAYDON
100 South Third Street
Columbus, OH 43215
Tel. (614) 227-2300
Fax: (614) 227-2390

Scott A. Burow (*admitted pro hac vice*)
Illinois Bar No. 6242616
sburow@bannerwitcoff.com
Matthew P. Becker (admitted *pro hac vice*)
Illinois Bar No. 6255614
mbecker@bannerwitcoff.com
Christian T. Wolfgram (admitted *pro hac vice*)
Illinois Bar No. 6333565
cwolfgram@bannerwitcoff.com
BANNER & WITCOFF, LTD.

        71 S. Wacker Drive, Suite 3600
        Chicago, IL 60606
        Telephone: (312) 463-5000
        Facsimile: (312) 463-5001

        ATTORNEYS FOR DEFENDANT
        LEDGE LOUNGER, INC. and ANDERSON

- 12 -

## **LOCAL RULE 7.1 CERTIFICATE OF TRACK AND MEMORANDUM LENGTH**

I, Matthew P. Becker, certify that this case has not been assigned a specific track. Accordingly, Defendant believes this is an unassigned case having a 20 page limit for memorandum supporting its dispositive motions. LR 7.1 (f). The foregoing memorandum adheres to the page limitations set forth in LR 7.1(f).

*/s/ Matthew P. Becker*
Attorney for Defendant

## CERTIFICATE OF SERVICE

I certify that on October 17, 2024, a true and accurate copy of ANDERSON'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM was filed with the court through its ECF filing system, thereby providing notice to all counsel of record.

> */s/ Matthew P. Becker*
> Attorney for Defendant